In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1149

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SCOTT SCHWANKE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 08-CR-47-BBC-03—**Barbara B. Crabb**, *Judge*.

ARGUED JUNE 12, 2012—DECIDED SEPTEMBER 14, 2012

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges*.

PER CURIAM. After agreeing to cooperate with authorities investigating his drug-distribution conspiracy, Scott Schwanke received a death threat from his coconspirator, fled to the Philippines, and stayed for four years. Later he pleaded guilty to conspiracy to possess with the intent to distribute marijuana, 21 U.S.C. §§ 846, 841(a)(1), and was sentenced to 50 months' imprisonment. On appeal Schwanke challenges his sentence, arguing that the district court improp-

erly adjusted his offense level upward under U.S.S.G. § 3C1.1 for obstruction of justice. Because the court did not clearly err in finding that Schwanke willfully obstructed justice when he remained in the Philippines for years, we affirm.

Beginning in 2002 Schwanke participated in a vast drug-distribution network that supplied marijuana to customers in Wisconsin. He frequently picked up and delivered marijuana to the network's leader, Robert Michener. Schwanke was arrested in late 2006 but released without formal charges after agreeing to cooperate with authorities. He informed police about his drug deliveries to Michener and others and later recounted these conversations to a lawyer. Unbeknownst to Schwanke, the lawyer shared this information with Michener. (The record contains no further details about the lawyer.)

Upon learning of Schwanke's cooperation, Michener confronted Schwanke at his home, put a gun to Schwanke's head, and threatened to kill him. As recounted in the presentence investigation report, Michener told a coconspirator that those informants "working for the feds" would "get what was coming to them" and that his "bounty hunters" could "take [ ] care of" anyone. Later Michener and another coconspirator returned to Schwanke's home, vandalized it, and threatened him that "people want you gone or dead." At that point Michener revealed what would happen next: Schwanke would go to the Philippines—the record does not say why—and Michener would give him money and instructions for obtaining a passport. When the time came

for Schwanke's departure—in late 2007—Michener accompanied him to the airport and escorted him to the Philippines-bound plane. For the next eight months, Michener wired money to Schwanke.

Schwanke stayed in the Philippines for four years. During that time he had no contact with any authorities or family members. He earned money for necessities by teaching English, but—in his words—he spent most of his time heavily consuming alcohol.

In the meantime—in 2008—Schwanke, Michener, and three codefendants were indicted for conspiracy to possess with intent to deliver marijuana (count 1) and attempted distribution of marijuana (counts 2 and 3), 21 U.S.C. §§ 846, 841(a)(1). Michener pleaded guilty to the conspiracy count and was sentenced to 151 months' imprisonment. *United States v. Michener*, 352 F. App'x 104, 105-06 (7th Cir. 2009).

In 2011, Schwanke was discovered at a store in Cebu, Philippines, by Immigration and Customs Enforcement officials. (The nature of this discovery is also not reflected in the record.) ICE officials confiscated his passport and returned him to the United States, where he was arrested under a warrant for the crimes charged in the indictment. He pleaded guilty to the conspiracy count.

At sentencing, the district court rejected Schwanke's argument that he did not deserve the two-level upward adjustment under § 3C1.1 for obstruction of justice. Schwanke objected to the adjustment on the basis that he fled and stayed abroad out of fear for his life because

he "had no information about what became of Michener" and he believed that "higher ups in the organization [ ] wanted him dead or gone." Defense counsel added that Schwanke did not contact authorities while abroad due to fear "that Michener actually had inside information that he may have gotten from the police." The court disbelieved Schwanke's version of events, concluding that Schwanke avoided prosecution through calculated evasion of authorities. For purposes of its § 3C1.1 analysis, the court focused not on Schwanke's flight to the Philippines—which, the court acknowledged, likely resulted from death threats and panic—but on Schwanke's decision to remain abroad four more years. Michener's threats notwithstanding, the court remarked, Schwanke made "a very unfortunate decision" because he had "other alternatives" if he did not trust the police; he could, for instance, have contacted his family or the Federal Bureau of Investigation. Even if Schwanke fled out of fear of reprisal, the court added, the § 3C1.1 adjustment was warranted because he remained "hidden" for years despite having "other options," he "was aware of the ongoing investigation," and he knew "that federal charges were a real possibility." The court sentenced Schwanke to 50 months' imprisonment—near the middle of his 46 to 57-month range based on a total offense level of 23 and Category I criminal history.

On appeal Schwanke challenges only the application of the § 3C1.1 adjustment. That section applies if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing

of the instant offense of conviction." U.S.S.G. § 3C1.1. The word "willfully" in § 3C1.1 means "specific intent," *e.g.*, *United States v. Martinez*, 650 F.3d 667, 670 (7th Cir. 2011); *United States v. Nurek*, 578 F.3d 618, 623 (7th Cir. 2009). Specific intent is usually inferred from the defendant's conduct. *See United States v. Gonzalez*, 608 F.3d 1001, 1007 (7th Cir. 2010); *United States v. Arceo*, 535 F.3d 679, 687 (7th Cir. 2008); *United States v. Porter*, 145 F.3d 897, 903 (7th Cir. 1998). The application notes to § 3C1.1 explain that "[a]voiding or fleeing from arrest" is conduct not ordinarily covered by the guideline, U.S.S.G. § 3C1.1 cmt. n.5(D), but we distinguish between panicked, instinctive flight, which does not warrant the adjustment, and calculated evasion, which does, *Gonzalez*, 608 F.3d at 1006-07; *Arceo*, 535 F.3d at 687; *Porter*, 145 F.3d at 903.

Schwanke argues that the district court failed to make adequate factual findings to support the § 3C1.1 adjustment because the court never determined that his continued stay in the Philippines was voluntary or that he specifically intended to obstruct justice. He maintains that his ongoing stay was not calculated evasion because he intended merely to save his life, not avoid arrest or prosecution.

We believe that the district court's findings sufficiently reflect Schwanke's willful obstruction of justice. The court found that Schwanke fled the jurisdiction before being indicted; knew during his years abroad that an investigation into the conspiracy was ongoing; recognized the possibility of federal charges given his

initial cooperation with authorities in exchange for his release without formal charges; and hid in the Philippines for years without contacting authorities. *See generally Gonzalez*, 608 F.3d at 1006-07 (upholding § 3C1.1 adjustment where defendant was arrested and released from custody "in exchange for promises to cooperate and to keep in touch, broke his promises, [and] created delay and expense" by fleeing jurisdiction); *Arceo*, 535 F.3d at 682, 687 (upholding § 3C1.1 adjustment where defendant was arrested, agreed to cooperate, was released from custody, "knew he would be charged with a crime; yet he fled the jurisdiction"); *Porter*, 145 F.3d at 903-04 (upholding § 3C1.1 adjustment where defendant fled jurisdiction despite knowing that indictment was imminent and that his attorney was negotiating a plea agreement and voluntary surrender); *United States v. Billingsly*, 160 F.3d 502, 506-07 (8th Cir. 1998) (upholding § 3C1.1 adjustment where defendant fled jurisdiction after being released from custody, promising to cooperate, and knowing that if he did not have daily contact with police he would be charged with crimes).

Schwanke analogizes his case to *United States v. Hanhardt*, in which we concluded that a defendant lacked the specific intent required for the § 3C1.1 adjustment because he missed a scheduled hearing as a result of attempted suicide, 361 F.3d 382, 388-89 (7th Cir. 2004), *vacated on other grounds*, *Altobello v. United States*, 543 U.S. 1097 (2005). Schwanke urges that he stayed abroad out of a specific intent to preserve rather than end his life. But we explicitly limited *Hanhardt* to

its facts, explaining that "[t]he nature of suicide does not lend itself to a clear understanding of an individual's motivation other than the obvious intent to end his life." *Hanhardt*, 361 F.3d at 389; *see also United States v. Curb*, 626 F.3d 921, 929 (7th Cir. 2010) (explaining that a "disturbed mental state" like that in *Hanhardt* may be considered for § 3C1.1 purposes "in very limited cases"). And although Schwanke attributes his lengthy stay abroad to sustained panic out of a belief that police shared confidential information with Michener, he points to nothing in the record to support the reasonableness of such a belief, which the district court was entitled to discredit. *See generally Arceo*, 535 F.3d at 687 (explaining that defendant must support belief with record evidence).

For its part, the government urges that Schwanke's case is "directly on point" with *United States v. Martinez*, 650 F.3d 667, 669-71 (7th Cir. 2011), in which we upheld the § 3C1.1 adjustment where the defendant pleaded guilty and agreed to cooperate but later fled because he feared threats from former gang associates and failed to appear at a scheduled sentencing. But *Martinez* involved conduct explicitly covered under the guideline, *see* U.S.S.G. § 3C1.1 cmt. n.4(E) ("willfully failing to appear, as ordered, for a judicial proceeding"), and Schwanke's case does not, *id.* cmt. n.5(D) ("avoiding or fleeing from arrest").

AFFIRMED.