In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1975

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES U. NDURIBE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 682-2—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED DECEMBER 12, 2012—DECIDED JANUARY 4, 2013

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant (whose actual name is Shefu Adebanji Alade Amisu, but we'll refer to him by the name he uses in the United States and under which he was prosecuted) pleaded guilty to a heroin offense and was sentenced to 116 months in prison. The sentence was within the guidelines range (108 to 135 months), but only because the judge added two levels for obstruction of justice to the defendant's base offense

level. Without that addition his guidelines range would have been 87 to 108 months, and the judge said that had that been the applicable range he would have imposed only a 94-month sentence.

In September 2006 the defendant, a Nigerian living in Chicago, learned that police were at the home of a co-conspirator. He called his own home and heard strange voices. He called his drug supplier to warn him that the police were closing in on the drug ring and then (using a cellphone that he had bought after learning the police were closing in) called relatives in Nigeria and told them to send to him (under an alias) in New York both a Nigerian passport and a plane ticket from New York to Nigeria. They complied. He picked up the documents in New York (to which he had traveled by a circuitous route, via Little Rock, Arkansas), flew to Nigeria, later flew from there to Amsterdam, and after living there for several years under an alias was arrested and after a year of fighting arrest and extradition (by claiming that he was not Nduribe) was extradited by the Dutch government to the United States. He had evaded arrest for five years. Indicted in absentia, upon returning to the United States he pleaded guilty to his drug offense. He argues that his conduct in evading arrest was not obstruction of justice, but merely flight.

Oddly, there is no general federal crime of obstruction of justice. Chapter 73 of the criminal code, 18 U.S.C. §§ 1501-21, punishes a number of discrete forms of obstruction, none applicable to this case. But section 3C1.1(1)

of the sentencing guidelines adds two offense levels to the defendant's base offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." This certainly describes the behavior of the defendant in this case. He delayed his apprehension by five years and during that period put the government to the expense of searching for him on three continents before finally obtaining his arrest and extradition, which undoubtedly involved our government's active participation in the extradition proceeding, as in *United States v. Kashamu*, 656 F.3d 679, 681 (7th Cir. 2011). The delay may have made it more difficult for the government to prosecute him and his confederates and may have induced the government to make concessions in plea bargaining that it would not have made had it not been for the lag in time between the crime and the defendant's involuntary return to face justice. Granted, these are conjectures; but we do not think proof that a five-year wild goose chase is a burden to law enforcement is necessary; the point is obvious.

So if the obstruction guideline had stopped with the passage we quoted, the case would be open and shut. But the Sentencing Commission decided to elaborate the guideline in a series of application notes, some of embarrassing obviousness, such as note 2, which says that the assertion of a constitutional right is not obstruction of justice. Note 4 is a nonexclusive list of acts of obstruction; again most of the listed items are obvious, such as threatening a witness, suborning perjury, destroying

evidence, and escaping from custody. But note 5 lists "some types of conduct [that] ordinarily do not warrant application of this adjustment" (that is, the increase in the base offense level), and among these are "(A) providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense" and "(D) avoiding or fleeing from arrest" (provided the flight does not cause "reckless endangerment").

These exceptions, particularly (D), puzzle us. If providing a false name or identification document at arrest merits the two-level increase when "such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense," why should avoiding or fleeing from arrest not merit the increase when significant hindrance to the investigation or prosecution of the offense results? Five years of avoiding arrest through use of alibis and travel to foreign countries are bound to create a significant hindrance to a prosecution. If not—if for example essential evidence of guilt serendipitously emerges in that period—the burden of establishing the exception should be the defendant's.

Nduribe argues that he had no duty to surrender to the police when he learned they were after him. The government concedes as much. But he did a lot more than just not drive to the nearest police station and give himself up. There's a difference between not making it easier for the police to arrest you and making it much harder for them to do so.

Maybe application note (D) should be read as limited to leaving the scene of an arrest or an attempt at arrest, as distinguished from protracted flight. And, if not, what would nevertheless still save the day for the government in a case like the present one would be the hedge word "ordinarily"—the note says that the types of conduct listed that include avoiding or fleeing arrest "ordinarily do not warrant" enhancement of the sentence. Maybe the Sentencing Commission when it used the word "ordinarily" was thinking of the kind of case we confronted in *United States v. Draves*, 103 F.3d 1328, 1336-37 (7th Cir. 1997). Draves was arrested for credit card fraud and the arresting officers placed him in their police car while they arrested an accomplice nearby. While they were attending to the accomplice, Draves, though handcuffed, managed to jump out of the car (the police must have failed to lock the doors from the outside) and flee on foot. The officers pursued him and caught him "a mere three houses away from the scene of arrest." *Id*. at 1337; see also *United States v. Hagan*, 913 F.2d 1278, 1284-85 (7th Cir. 1990); *United States v. Burton*, 933 F.2d 916, 918 (11th Cir. 1991); *United States v. Stroud*, 893 F.2d 504, 507-08 (2d Cir. 1990); *United States v. Garcia*, 909 F.2d 389, 392 (9th Cir. 1990). A handcuffed nonviolent criminal, Draves not only failed to get far but cannot have put up any effective resistance when the officers caught up with him after the brief chase. Notice too that it was a case within our suggested narrow reading of application note (D), as Draves ran from the arrest scene; unlike Nduribe he did not flee the vicinity of the arrest and end up thousands of miles away living under a different name.

So the ruling in *Draves* was correct, but not for the reason given in the opinion—that "panicked, instinctive flight," illustrated by Draves's futile dash for freedom, must be distinguished from "calculated evasion" of apprehension. 103 F.3d at 1337. "Panic" and "instinct" are not mitigating motivations for criminal behavior. Much crime is not "calculated." A criminal might panic and kill an informant; a kleptomaniac might steal instinctually. It was not Draves's state of mind that averted a finding of obstruction of justice but the fact that his pathetic effort at flight did not impede the administration of justice. He delayed law enforcement not by years, as our defendant did, but by seconds. *De minimis non curat lex*.

In a subsequent case, much like this one, we found obstruction of justice when the defendant "knew he would be charged with a crime; yet he fled the jurisdiction, living in Mexico for several years and later returning to the United States, relocating to distant Pennsylvania under an assumed name." *United States v. Arceo*, 535 F.3d 679, 687 (7th Cir. 2008). For all we know Arceo had fled in panic. Yet that was no defense. And there is no suggestion of panicky or instinctive behavior in this case; the defendant acted deliberately. And Nigeria and the Netherlands are a lot farther from Chicago than are Mexico and Pennsylvania. See also *United States v. Schwanke*, 694 F.3d 894, 897 (7th Cir. 2012); *United States v. King*, 506 F.3d 532, 535 (7th Cir. 2007); *United States v. Porter*, 145 F.3d 897, 902-04 (7th Cir. 1998); *United States v. Feldman*, 647 F.3d 450, 464-65 (2d Cir. 2011); *United States*

*v. Martinez*, 263 F.3d 436, 441 (5th Cir. 2001); *United States v. Billingsley*, 160 F.3d 502, 506-07 (8th Cir. 1998).

Several cases, while factually distinguishable from our cases, set a higher bar for the obstruction enhancement. *United States v. Bliss*, 430 F.3d 640 (2d Cir. 2005), is illustrative; see also *United States v. Stites*, 56 F.3d 1020, 1026 (9th Cir. 1995); *United States v. Alpert*, 28 F.3d 1104, 1106-07 (11th Cir. 1994) (en banc); *United States v. Madera-Gallegos*, 945 F.2d 264, 268 (9th Cir. 1991). Bliss, a Vermont resident, upon learning that police had executed a search warrant of his bedroom (where he kept videotapes of his sexually abusing his nine-year-old niece) and wanted to speak to him, fled to California, where he used aliases, and also gained weight and grew facial hair to alter his appearance. He was able to evade arrest for a year. The Second Circuit—strangely as it seems to us—said that Bliss's actions "amount to little more than 'simply disappear[ing] to avoid arrest'" and thus "fall short of what we believe the Sentencing Commission contemplated in prescribing the enhancement for obstruction of justice." 430 F.3d at 648. *Disappearing* to avoid arrest? What better example of obstructing justice could one want?

The opinion faults the FBI for having placed Bliss on its "Ten Most Wanted List," which the court said resulted in the government's spending "the bulk of its resources . . . pursuing false leads provided by 'America's Most Wanted' viewers—not following Bliss on a wild goose chase of his own making." *Id.* at 650. Second-guessing the government's enforcement strategy (while

denying that it was doing that), the court reasoned that had the government been smart, Bliss wouldn't have gotten away with his "disappearance" and so would not have succeeded in obstructing justice. The court must have forgotten the phrase "*or attempted* to obstruct or impede" (emphasis added) in the guideline. See, e.g., *United States v. Porter*, *supra*, 145 F.3d at 904. The attempt is culpable even if the police are clever and foil it. If they're not clever and so fail to foil it, that's no reason to exculpate their quarry for having succeeded in obstructing justice.

Flight from arrest is obstruction of justice within the meaning of the guideline (even if read narrowly, but with due weight given to the qualification in "ordinarily") if it is likely to burden a criminal investigation or prosecution significantly—likely to make the investigation or prosecution significantly more costly or less effective than it would otherwise have been, a criterion easily satisfied in this case. (A defendant's conduct is attempted obstruction if, had it succeeded, it would have had those consequences.) Twenty-two additional months of imprisonment were not an excessive penalty for the defendant's five years of pertinacious, deceitful, unexcused evasion of justice.

We add that warning a co-conspirator in a drug crime, as Nduribe did, that the police are closing in might well be thought an implied instruction to destroy the drugs in order to eliminate a potent form of evidence in a drug prosecution. (The supplier whom the defendant called with the warning kept drugs in his home and

could have flushed them down the toilet.) That would be an independent act of obstruction of justice, either attempted or completed, depending on whether the supplier heeded the warning and destroyed the drugs.

AFFIRMED.