In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3351

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAVIER MUNOZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:07-cr-22-1—**Larry J. McKinney**, *Judge.*

ARGUED APRIL 30, 2013—DECIDED JUNE 10, 2013

Before FLAUM, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Pursuant to a plea agreement, defendant Javier Munoz pled guilty in 2007 to distributing and possessing cocaine with intent to distribute, but he fled to Mexico before his sentencing. It took the government five years to track him down and extradite him. When he finally faced sentencing in 2012, the district court imposed a sentence of 181 months in prison, which was below the advisory sentencing guide-

line range. Munoz has appealed, arguing that at the time of sentencing, the government breached the plea agreement by (1) advocating a base offense level higher than the parties had agreed in the plea agreement, and (2) recommending a sentence in the middle of the guideline range rather than at the bottom. As we view the case, however, it was Munoz, not the government, who materially breached the conditions of his release and an implied term of the plea agreement by fleeing the country rather than showing up for sentencing. Munoz's breach permitted the government to treat the plea agreement as having been rescinded. We affirm.

I. *Factual and Procedural Background*

Munoz was charged in 2005 with conspiring to distribute cocaine. See 21 U.S.C. §§ 846, 841(a)(1). At an initial court appearance, he was released on personal recognizance after he promised to appear at all court proceedings and to remain in the district unless he received permission to leave. He also acknowledged that failing to appear at court proceedings or to serve his sentence would be punishable by up to ten years in prison.

Munoz then signed a plea agreement in January 2007 admitting that he had distributed cocaine and possessed cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). In the plea agreement, the government promised "to recommend a sentence at the minimum of the applicable sentencing guidelines range" and agreed to a series of stipulations that would be "binding on the parties," though those stipulations would be only a

"recommendation to the Court." Working from the relevant quantity of drugs, the parties stipulated that the base offense level should be 30 under the guidelines. The government also stipulated that if Munoz "continue[d] to accept responsibility," he would be entitled to a two-level reduction under U.S.S.G. § 3E.1.1(a) and the government would move for an additional one-level reduction under U.S.S.G. § 3E.1.1(b). In addition, Munoz waived his right to appeal if the district court sentenced him "at the minimum of the applicable sentencing guidelines range." Munoz formally entered his guilty plea at a hearing in February 2007, and the court set a June 15 sentencing date.

Munoz did not appear at that hearing. He fled to his home country of Mexico. Nearly five years later, in January 2012, U.S. Marshals Task Force officers arrested him. Munoz was extradited to the United States to appear for sentencing.

In preparing for the delayed sentencing hearing, a probation officer's presentence report recommended a base offense level of 32, two levels higher than the base offense level in the plea agreement. The probation officer believed Munoz was responsible for more drugs than the parties had agreed. After adding upward adjustments for obstruction of justice, U.S.S.G. § 3C.1.1, and possession of a dangerous weapon, § 2D1.1(b)(1), and declining to give Munoz credit for acceptance of responsibility, § 3E.1.1(a), the probation officer calculated a total offense level of 36 and a criminal history category of II, yielding a guideline range of 210 to 262 months

in prison. At the sentencing hearing, the government endorsed these calculations. The government contended that after Munoz's flight from justice, it was no longer bound by its stipulations in the plea agreement and could advocate a base offense level of 32. Defense counsel argued that the government was still bound to support the stipulated base offense level of 30.

The district court agreed with the government and applied a base offense level of 32, reasoning that Munoz lost "the benefit of [his] bargain on the plea" when he absconded. The parties then debated whether Munoz should still receive credit for accepting responsibility because of his guilty plea. Munoz maintained that he should. The government insisted that "fleeing to a foreign country where extradition treaties typically aren't honored is completely inconsistent with accepting responsibility." The court again agreed with the government and applied the probation officer's guideline calculations.[1]

After the court accepted the guideline range of 210 to 262 months in prison, the parties debated the appro-

---

[1] Regarding the prosecutor's comment about Mexico and extradition treaties, Article 9 of the United States-Mexico Extradition Treaty, May 4, 1978, 31 U.S.T. 5059, actually provides that neither nation is *required* to deliver its own nationals to face prosecution or punishment in the other nation. The executive authority of each nation has discretion to honor such requests, as Mexico honored the United States request for extradition of Munoz.

priate sentence in light of the statutory sentencing factors. See 18 U.S.C. § 3553(a). Munoz's counsel urged a sentence of 121 to 144 months, which he said was approximately three to five years more than Munoz would have received if he had appeared at his initial sentencing hearing. The government emphasized Munoz's flight from justice and sought a sentence in the middle of the guideline range. The court recounted Munoz's underlying drug activity and decision to leave the country and concluded that Munoz's drug convictions warranted a sentence around 121 months, while his flight justified an additional 60 months. The court imposed a 181-month sentence, which was 29 months below the bottom of the advisory guideline range.

## II. *Discussion*

On appeal Munoz argues that the government breached the plea agreement when it argued for a base offense level of 32 and a mid-range sentence instead of a sentence at the bottom of the range. In Munoz's view, the government was not free to repudiate the plea agreement despite his flight because the plea agreement did not contain express language permitting it to do so. Cf. *United States v. Rivera*, 954 F.2d 122, 123 (2d Cir. 1992) (plea agreement expressly provided that if defendant failed to appear for sentencing, among other types of breaches, "the Government may void this agreement"). In addition, Munoz contends that the government got all it bargained for — a guilty plea that relieved

it from going to trial — so that the government was not harmed substantially by his flight.

When considering claims that a plea agreement has been breached, we generally use contract law principles, though with an eye to "the special public-interest concerns" that arise in this context, and we interpret a plea agreement based on the parties' reasonable expectations and construe ambiguities against the government as the drafter. *United States v. O'Doherty*, 643 F.3d 209, 217 (7th Cir. 2011), quoting *United States v. Monroe*, 580 F.3d 552, 556 (7th Cir. 2009); see also *United States v. Schilling*, 142 F.3d 388, 394-95 (7th Cir. 1998) (recognizing special public character of plea agreements). As a general rule, the government is bound to honor the promises it makes to induce the defendant to plead guilty, see *O'Doherty*, 643 F.3d at 217, but a defendant who substantially breaches a plea agreement cannot force the government to uphold its end of the bargain. See *United States v. Kelly*, 337 F.3d 897, 901-02 (7th Cir. 2003) (defendant breached obligation to provide assistance in other investigations); *United States v. Ramunno*, 133 F.3d 476, 484 (7th Cir. 1998) (defendant breached agreement to provide complete and truthful information about criminal activity). Where, as here, there is no dispute about the relevant facts, we review *de novo* the interpretation of a plea agreement. See *Schilling*, 142 F.3d at 394.

When Munoz fled the country and spent nearly five years as a fugitive in Mexico, he breached what we believe was an implied but obvious term of the plea agreement that he remain in the country and show up

for sentencing. Plea agreements are interpreted under contract law principles in light of the parties' reasonable expectations concerning the meaning of the terms. See *O'Doherty*, 643 F.3d at 217. No defendant could reasonably expect that he could abscond for five years and still hold the government to its promises under the plea agreement. Even in the absence of a statement in a plea agreement itself explicitly requiring the defendant to show up for sentencing, any reasonable defendant has a common-sense understanding that he must not flee the country. And in any event Munoz was aware of his responsibilities dating back to his initial court appearance, when he promised to show up for sentencing and not to leave the district without permission as conditions of his pretrial release. See generally 18 U.S.C. § 3142(c)(1)(B) (standard terms for pretrial release).

We confronted a similar issue and came to the same conclusion in *United States v. Delacruz*, 144 F.3d 492, 494-95 (7th Cir. 1998). Like Munoz, Delacruz pled guilty to a drug crime and then fled to Mexico rather than face sentencing. Lured by the prospect of a lucrative marijuana deal, though, Delacruz eventually returned to the United States and was arrested. *Id.* at 493-94. On appeal, Delacruz argued that the government breached an oral plea agreement by arguing for a sentence greater than the 24 months the government originally had agreed to recommend. *Id.* at 493-95. We rejected that argument, reasoning that "the government did not breach the plea agreement; rather Delacruz did so by not appearing for sentencing and continuing his criminal activity." *Id.* at 495.

Munoz contends that *Delacruz* is distinguishable because he, unlike Mr. Delacruz, did not continue trafficking drugs after his flight to Mexico. We do not read *Delacruz* so narrowly. Regardless of whether a defendant commits additional crimes after absconding, his failure to appear for sentencing violates the conditions of pretrial release and one of the fundamental premises underlying any plea agreement: a willingness to face the consequences of admitted criminal conduct. As a result, we agree with our colleagues in the Fourth Circuit that a defendant breaches a plea agreement when he absconds before sentencing even if the agreement is silent on the subject. See *United States v. David*, 58 F.3d 113, 114-15 (4th Cir. 1995) ("implicit in every such plea agreement is the defendant's obligation to appear for sentencing").

Munoz also argues that his flight "did not deprive the government of the benefit of its bargain" because the government still avoided the cost of trial. He contends, essentially, that any breach of his plea agreement was insubstantial. But it is not as though Munoz had a flat tire while driving to the scheduled sentencing and made himself available for sentencing the next day. Because Munoz spent five years on the run, the government got much less than it bargained for. Although Munoz's eventual capture ensured that the government obtained some benefit from his guilty plea — the benefit of avoiding trial — the government also devoted resources to finding, arresting, and extraditing him, and it faced the possibility that he would never be punished for his crimes. See *United States v. Elliott*, 467 F.3d 688, 691-92

(7th Cir. 2006); cf. *United States v. Nduribe*, 703 F.3d 1049, 1050-51 (7th Cir. 2013) ("we do not think proof that a five-year wild goose chase is a burden to law enforcement is necessary; the point is obvious").

Given Munoz's substantial breach, the government appropriately exercised its option to rescind the deal. See *Kelly*, 337 F.3d at 901; *Ramunno*, 133 F.3d at 484. Though we might have faced more difficult issues if the government had tried to enforce only a few select provisions of the plea agreement, the government has treated the entire plea agreement as void, including the provisions that would have benefitted it, such as Munoz's waiver of his appeal rights. That waiver is now unenforceable along with the rest of the agreement. See *United States v. Sakellarion*, 649 F.3d 634, 639 (7th Cir. 2011) ("an appellate waiver stands or falls with the rest of the bargain") (internal quotation omitted); *Nunez v. United States,* 546 F.3d 450, 454 (7th Cir. 2008).[2]

Munoz's other arguments do not warrant extensive discussion. He contends that the district court should have given him credit for acceptance of responsibility under U.S.S.G. § 3E.1.1(a). He concedes, though, that his flight obstructed justice, creating a presumption that he did not accept responsibility for his crimes. See *United States v. Etchin*, 614 F.3d 726, 740 (7th Cir. 2010). No exceptional circumstances here would have

---

[2] Munoz never sought to withdraw his plea of guilty, so we need not address the substantially different considerations that would arise in such a case.

required the district court to find otherwise. See *United States v. Davis*, 442 F.3d 1003, 1009-10 (7th Cir. 2006). Munoz's reliance on *United States v. Mount*, 675 F.3d 1052, 1053 (7th Cir. 2012), is inapposite. *Mount* concerned the court's power to deny the government's motion under § 3E.1.1(b), not the court's discretionary authority to deny credit for acceptance of responsibility under § 3E.1.1(a).

Munoz also asserts that the district court violated his due process and equal protection rights by increasing his sentence by 60 months because of his flight. In his view the guidelines would have called for a shorter sentence if he had been charged separately with failure to appear. We have found no support for this constitutional argument. At sentencing, defense counsel conceded that Munoz's flight justified up to five years more time in prison than he would have received for the underlying drug crimes alone. The court did not violate the Constitution when it sentenced Munoz in line with that possibility and the overall sentence remained below the applicable guideline range.

The judgment of the district court is AFFIRMED.