In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1300

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALAN CISNEROS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cr-00356-1 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED NOVEMBER 8, 2016 — DECIDED JANUARY 25, 2017

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* On June 23, 2015, Alan Cisneros pled guilty to possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846. The facts as developed at the plea hearing and during sentencing reveal that Cisneros was a high-ranking member of the Latin Kings and

was involved in a large-scale drug trafficking operation in Summit, Illinois. In the 10-month period between approximately August 2011 and May 2012, Cisneros admits that he was responsible for the purchase or sale of between 3.5 and 5 kilograms of cocaine, but he disputes the government's calculation—accepted by the district court—that the amount exceeded 5 kilograms. The district court determined that the Sentencing Guidelines range applicable to Cisneros was 188–235 months, and sentenced him to 188 months' imprisonment, a supervised release term of four years, a special assessment of $100, and repayment to the government of $34,600 in "buy money" provided to Cisneros during the course of his offense.

Cisneros now appeals his sentence on three grounds. First, he argues that the district court, in calculating the applicable discretionary Sentencing Guidelines range, improperly imposed a two-level enhancement for obstruction of justice. In addition, Cisneros argues that the district court should have granted him a three-level reduction for acceptance of responsibility. Finally, he contends that the district court erred in determining that his offense involved more than 5 kilograms of cocaine.

The district court applied the enhancement for obstruction of justice based on Cisneros' attempts to flee to Mexico to evade authorities. Cisneros was initially apprehended on May 7, 2012, as he was in the process of a drug transaction at a laundromat. Federal agents observed Cisneros approach a van driven by his wife in the laundromat parking lot and retrieve something from that van which he placed in his waistband. As he walked toward the laundromat, the agents drove into the lot. Seeing them, Cisneros fled into the side door of the

laundromat. As he was running through the laundromat, agents observed him throw a small package down on the floor, which was subsequently determined to contain 58 grams of cocaine. The agents were able to apprehend Cisneros before he reached the laundromat's front door, and placed him under arrest. The agents also retrieved an additional 216 grams of cocaine from the van.

The agents then transported Cisneros to a local police department, at which point he acknowledged that the cocaine belonged to him and indicated an interest in cooperating. They released him at that time. The next day they contacted him and asked him to meet them at a specific location in Bedford Park. He did so, and voluntarily got into a vehicle with the agents, who drove him to a local office of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Only then did he learn for the first time that the investigation was a federal one, and that it had involved months of wiretaps and surveillance. The agents asked him to cooperate in the investigation, and Cisneros requested time to consider the option and expressed concerns for his safety. The day after Cisneros was released from the agents' custody, the agents learned that he had booked a flight to Mexico. They responded immediately and apprehended him on the jetway at O'Hare Airport as he was boarding the flight to Mexico. Cisneros had with him a suitcase containing three new t-shirts that he had just purchased that day on the way to the airport, as well as approximately $2500 in cash[1], much of which had been returned to him by the

---

[1] The briefs provide divergent amounts as to the cash Cisneros possessed

(continued...)

agents. He had purchased a one-way ticket, and was traveling on his Mexican passport.

Relying on that effort to flee to Mexico, the district court imposed a two-level enhancement for obstruction of justice. We review the district court's obstruction finding for clear error, giving deference to that court's application of the Guidelines to the facts. *United States v. Arceo*, 535 F.3d 679, 687 (7th Cir. 2008); *United States v. Porter*, 145 F.3d 897, 902 (7th Cir. 1998).

Section 3C1.1 of the Sentencing Guidelines provides for a two-level enhancement if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense." Application Note 5 of that provision includes a non-exhaustive list of the types of conduct that "ordinarily" will not warrant that obstruction enhancement, and included in that list is "avoiding or fleeing from arrest." In interpreting that provision, however, we have clarified that some efforts to evade authorities through flight can nevertheless warrant the enhancement. The ultimate question remains whether the defendant's conduct evidences a willful intent to obstruct justice. *Porter*, 145 F.3d at 903. Accordingly, we have distinguished between "panicked, instinctive flight," generally in the immediate aftermath of the crime, and "calculated evasion" constituting a deliberate

---

[1] (...continued)

when apprehended at the airport, generally ranging from more than $2043 to $2500. Cisneros' brief states the amount was $2500, and that is the amount we will use.

attempt to frustrate or impede an ongoing criminal investigation. See *United States v. Schwanke*, 694 F.3d 894, 897 (7th Cir. 2012); *United States v. Gonzalez*, 608 F.3d 1001, 1006–07 (7th Cir. 2010); *Arceo*, 535 F.3d at 687. Thus, although flight from officers at the time of arrest may not constitute obstruction, we have upheld the obstruction finding in many cases in which the defendant has evaded authorities by traveling to distant locations and assuming a new identity, or traveling to a foreign country where the authorities will have significant difficulty in finding and apprehending the defendant. See *Schwanke*, 694 F.3d at 895 (defendant fled to the Philippines and stayed for four years); *Arceo*, 535 F.3d at 687 (defendant fled to Mexico for several years and then relocated to Pennsylvania under an assumed name); *Porter*, 145 F.3d at 902 (defendant traveled from Indiana to Tennessee and used a false name, including a false birth certificate and social security card, and altered his hair color).

More recently, in *United States v. Nduribe*, 703 F.3d 1049 (7th Cir. 2013), we further clarified the distinction between flight that supports the enhancement and that which does not. The *Nduribe* court clarified that the distinction does not rest on the state of mind—"panicked or instinctual" versus "calculated." *Id.* at 1052. Although our cases recited that language, the holdings in fact turned on whether the defendant's conduct impeded the administration of justice. *Id.* Therefore, the proper question in applying that enhancement to efforts to flee are whether the flight is "likely to burden a criminal investigation or prosecution significantly—likely to make the investigation or prosecution significantly more costly or less effective than it would otherwise have been." *Id.* at 1053. We further recog-

nized in *Nduribe* that the phrase in § 3C1.1, "*or attempted to obstruct or impede*," allows imposition of the enhancement whether or not the defendant was successful in the effort. *Id.* at 1053; see also *Porter*, 145 F.3d at 904. Where the defendant's efforts were foiled and therefore constituted only an attempt, the standard is met "if, had it succeeded, it would have had those consequences." *Nduribe*, 703 F.3d at 1053.

In this case, we have examples of both efforts at flight that support application of the enhancement, and flight that does not. When Cisneros first spotted the agents near the laundromat, he fled through the side door and ran through the laundromat towards its front door in an effort to escape. That is the type of conduct that, in earlier cases, we would have labeled "panicked, instinctive flight," but which we now more precisely would describe as the type of conduct that is not likely to significantly burden the investigation or prosecution. The flight was predictably intercepted almost immediately, and even if he had evaded capture at that initial point, there is no reason to believe that his freedom would have been anything but short-lived. In contrast, his effort to flee to Mexico was highly likely to significantly burden the investigation or prosecution. Cisneros asserts that he had no intention of remaining in Mexico, that he was simply seeking some time to clear his mind and weigh his options, and intended to return. The district court certainly was not required to credit that version, and in this case the objective evidence belies his claim.

Cisneros booked only a one-way ticket, thus negating his claim that he planned to return in short order. Furthermore, he fled in a manner that appeared to be designed to evade notice. Having been made aware that the agents had been monitoring

his phone and his home as part of the investigation, Cisneros did not pack clothes from home, but merely purchased a few t-shirts on the way to the airport and attempted to depart quickly. Other than those t-shirts, he filled the suitcase with $2500 in cash, which would allow him to travel within Mexico without easily being traced. In addition, the pre-sentence report establishes that Cisneros was an illegal alien in the United States, a fact that was acknowledged in discussions at the plea hearing and sentencing, and which was evidenced by his possession of a Mexican passport. Given that status, Cisneros would not even have had the right to return to the United States. Moreover, although any flight to another country may have the potential for significant interference with an investigation, the attempted flight in this case presented a much more profound level of interference. By fleeing to Mexico as a Mexican national, Cisneros could have placed himself entirely outside the reach of the American authorities. The extradition treaty between the United States and Mexico allows each country to exercise its discretion over the extradition requests of its nationals. See *United States v. Munoz*, 718 F.3d 726, 728 n.1 (7th Cir. 2013). Therefore, the attempted flight in this case, similar to the flights to other countries in *Schwanke*, *Arceo*, and *Nduribe*, was likely to significantly burden the criminal investigation or prosecution if successful. Because the obstruction enhancement applies to attempted obstruction, not merely successful obstruction, the interception of Cisneros at the airport does not render the enhancement inapplicable. Here, given his status as a Mexican citizen and his actions in purchasing a one-way ticket and bringing large amounts of cash, the likely impact of his flight, if successful, is clear. The

district court did not clearly err in determining that his attempt to evade law enforcement by fleeing to Mexico warranted the enhancement for obstruction of justice.

Based on that determination, we also conclude that the district court did not err in refusing to grant a three-level reduction for acceptance of responsibility. Cisneros' argument for the three-level reduction is based in part on his contention that he did not obstruct justice, but as we have already rejected that assertion, he has an uphill battle in seeking a reduction for acceptance of responsibility. That is because "[a] defendant who obstructs justice may receive credit for accepting responsibility only in 'extraordinary cases.'" U.S.S.G. § 3E1.1, Application Note 4; *United States v. Pons*, 795 F.3d 745, 747 (7th Cir. 2015); *Gonzalez*, 608 F.3d at 1008. Cisneros has failed to demonstrate that his actions present such an extraordinary circumstance. He alleges only the type of eventual cooperation with the government and assertions of remorse that are common in cases before us. The district court did not clearly err in determining that Cisneros' sentence would not be reduced based on acceptance of responsibility.

Finally, Cisneros argues that the district court erred in determining that his offense involved more than 5 kilograms of cocaine. A criminal defendant has a "due process right to be sentenced on the basis of accurate information." *United States v. Bozovich*, 782 F.3d 814, 817 (7th Cir. 2015); *Ben-Yisrayl v. Buss*, 540 F.3d 542, 554 (7th Cir. 2008). Sentencing determinations must be made based on reliable evidence, but courts may make reasonable though imprecise estimates based on the information that has indicia of reliability. *Bozovich*, 782 F.3d at 817–18. Furthermore, a preponderance of the evidence is all that is

required for a factual finding of drug quantity under the Sentencing Guidelines. *Id.* at 818. We review the district court's determination of drug quantity only for clear error. *Id.*

Cisneros agreed with the cocaine amounts attributed to the vast majority of the transactions, identifying only three errors. First, Cisneros argues that the district court improperly determined that a transaction referenced 12 ounces of cocaine as opposed to 12 grams of cocaine. Second, Cisneros asserted that the district court double-counted 500 grams of cocaine. He contends that the purchase of 500 grams of cocaine on February 7 and the sale of 500 grams of cocaine on February 9 involved the same cocaine, and therefore the court erred in counting that as 1000 grams rather than 500 grams of cocaine. Finally, he argues that the court erred in including attempted but not completed transactions.

As an initial matter, the government argues that we need not address Cisneros' challenges, because even if we subtract 500 grams from the February transactions, and subtract the difference between the 12 ounces and 12 grams, the drug quantity is still over 5 kilograms. The government acknowledges that Cisneros had also challenged in the district court the inclusion of "attempted" but not "completed" transactions, but asserts that Cisneros waived that claim in this appeal.

Cisneros does not address that claim of waiver in his reply brief. Instead, he merely asserts that his challenge to the drug quantity includes a challenge to the inclusion of 1500 grams that were part of transactions that were attempted but not completed. That argument, however, was referenced in only a cursory manner in Cisneros' opening brief to this court, in

contrast to its presentation to the district court. In the district court, Cisneros argued that the district court should not have included in the drug quantity the "attempted" transactions on May 2 & 3, 2012, that involved 1000 grams and on May 6, 2012, that involved 500 grams of cocaine. Cisneros conceded in the district court that under U.S.S.G. § 2D1.1, Application Note 5, completed sales and attempts to sell can be aggregated to determine the scale of the offense for offenses involving both a substantive drug offense and an attempt, but he nevertheless encouraged the district court to disregard such amount. That application note also provides that where the offense involves an agreement to sell, the agreed-upon quantity can be used to determine the offense level, but that such amounts must be excluded if the defendant establishes that he did not intend to provide or purchase—or was not reasonably capable of providing or purchasing—the agreed-upon quantity. U.S.S.G. § 2D1.1, Application Note 5. Cisneros did not contend that he fell within that exception.

On appeal to this court, however, Cisneros in his opening brief neither identifies the specific transactions constituting the "attempts," nor does he cite any of the relevant law. We have repeatedly and consistently held that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008). Cisneros failed to develop either the factual or the legal basis for his claim in this appeal. For instance, in his opening brief, Cisneros never identifies the amount of drugs improperly attributed to him by the district court based on attempted as opposed to completed transac-

tions, or the dates of those challenged transactions. The sole reference to the quantities and dates appears in an unrelated paragraph seeking to establish that Cisneros dealt in gram quantities as opposed to ounces, in which Cisneros states:

> On three days in May 2012 there [sic] conversations about transactions that never occurred in which amounts between 500 and 1000 grams were discussed. These amounts were used by the District Court to inflate the drug quantity, even though the evidence clearly showed that no transaction in these amounts occurred on the days in question.

Appellant's Brief at 26. That is the sole detailed reference to the "attempted" transactions that Cisneros purportedly challenges. We would need to reference the district court arguments to identify the exact dates and quantities. Moreover, in contrast to his argument in the district court, Cisneros does not reference the Guidelines provision, nor does he identify any caselaw regarding the propriety of relying on attempted transactions. The sole case cite is to a case holding that drug quantity calculation can include purchases, sales, or amounts used, but that decision was not presented with—and therefore did not address—the question here, which is the treatment of attempted transactions. In addition, Cisneros makes no effort to establish, as provided by the application note, that the amounts must be excluded because he did not intend to provide or purchase, or was not reasonably capable of providing or purchasing, the agreed-upon quantity. From the government brief, it appears that at least some of those "attempted" transactions were not completed because of intervention by law enforcement, and Cisneros presents no

argument as to why that should absolve him of responsibility for that drug quantity, but we cannot be certain as to the circumstances of those attempts because Cisneros provides no discussion of the transactions involved. Because he has provided only a perfunctory and undeveloped argument as to both the law and the underlying facts, this claim is waived.

That leaves only the challenge to the 12 ounces and the 500 grams, but even if Cisneros succeeded on both those claims, he would not fall below the five kilogram threshold and the Guidelines range would be the same. Accordingly, we need not address those claims.

The decision of the district court is AFFIRMED.