In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2680

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JACOB MIKULSKI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-CR-00645(1) — **John J. Tharp, Jr.**, *Judge.*

ARGUED APRIL 27, 2022 — DECIDED JUNE 1, 2022

Before SYKES, *Chief Judge*, and BRENNAN and SCUDDER,
*Circuit Judges.*

PER CURIAM. Jacob Mikulski was involved in a shootout in
a public park. After police questioned him about the incident,
he instructed his mother (with whom he lived) to hide his
gun. He eventually pleaded guilty to unlawful possession of
a firearm in violation of 18 U.S.C. § 922(g), and he was sen-
tenced above the guidelines range to 48 months in prison.
Mikulski appeals his sentence, arguing that the district court

misapplied a sentencing enhancement for obstruction of jus-tice based on his efforts to hide the gun. Because the district judge imposed an appropriate sentence, we affirm.

**I**.

On a summer afternoon in 2020, Mikulski—a Polish national residing illegally in the United States—took a gun loaded with blanks to confront a man who had threatened to harm him and his friends. Mikulski cornered the man at a park next to an elementary school in Mount Prospect, Illinois, northwest of Chicago. The confrontation quickly escalated into a shootout. Companions came to the aid of the man and fired live rounds. Mikulski responded with fire of his own, though he shot only blanks. No one was shot or injured.

One week later, local police arrested Mikulski for driving on a suspended license. They took him to a police station, and, because witnesses to the park shootout had identified Mikul-ski as one of the shooters, they questioned him about the in-cident. Afterward, Mikulski called his mother from the sta-tion and told her in Polish to take the bag containing the gun out of his bedroom and to throw it away in the back of the apartment complex. Unknown to Mikulski, an officer who understood Polish overheard the conversation. The officers searched the Mikulski house. By this time, however, Mikul-ski's mother had hidden the gun under a tree behind the house, so the officers found nothing. The next day they brought her to the police station for questioning. When Mikulski saw her, he told her to give up the gun's location. She did, and the officers recovered the gun.

Mikulski, who had a prior felony conviction, was charged in Illinois state court with aggravated discharge of a firearm,

*see* 720 ILCS 5/24-1.2(a). Later, he was federally charged and pleaded guilty to unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

The presentence investigation report (PSR) set Mikulski's base offense level at 14 based on his felon status at the time of the offense. *See* U.S.S.G. § 2K2.1(a)(6). With a three-level reduction for accepting responsibility, *see* § 3E1.1(a), (b), offset by a four-level enhancement for committing another gun offense (the Illinois charge for aggravated discharge), *see* § 2K2.1(b)(6)(B), and a two-level enhancement for obstruction of justice, *see* § 3C1.1, the PSR tallied a total offense level of 17 and criminal history category of III, yielding a guidelines range of 30 to 37 months in prison. *See* U.S.S.G. Ch. 5, Pt. A.

At sentencing, Mikulski objected to the enhancement for obstruction of justice. He argued that when he instructed his mother to hide the gun, he did not intend to obstruct the investigation, but only to ensure that she did not get in trouble for possessing the gun. No search for the gun had begun, he added, so he could not have obstructed any ongoing investigation. If anything, he suggested, by calling his mother, he unwittingly tipped off law enforcement to the gun's presence.

The district judge overruled Mikulski's objection. The enhancement was appropriate, the judge ruled, because Mikulski had tried "to conceal the evidence of a crime." That Mikulski's instruction to his mother preceded law enforcement's decision to search the house did "not mean that [the search] would not have happened … . The entire point of the instruction to Mr. Mikulski's mother was so that the gun would not be found in the house. That anticipates that the house likely [would be] the subject of a law enforcement

search." Whether Mikulski gave the instruction in order to conceal evidence of his crime or to avoid implicating his mother "doesn't matter … . It's still obstructive conduct designed to conceal evidence." The judge adopted the remaining calculations in the PSR.

Mikulski was sentenced above the guidelines range to 48 months in prison followed by three years' supervised release. Explaining how this sentence was warranted for Mikulski under the 18 U.S.C. § 3553(a) factors, the judge focused on the circumstances of the offense, specifically the location of the incident—a park where children were present—and Mikulski's escalation of the danger through his shots, even if they were blanks:

> [I]t is beyond comprehension that the public can't even use a park next door to a school because people like Mr. Mikulski are putting them in danger … . Yes, Mr. Mikulski's firearm had blanks in it, and yes, according to the police reports, he didn't fire the first shot. But … when he returned fire, that prompted additional firing from the other side. And the other side wasn't using blanks. … [T]he fact that nobody was hit or injured, the fact that no child was gunned down in this shootout in a public park is nothing more than blind luck. … Had anyone been hit by these bullets, the idea that we would be talking about the sufficiency of 30 to 37 months would be laughable.

Compounding the seriousness of the offense, the judge added, was that Mikulski had possessed the gun for more than a year, he implicated his mother in the crime, and he

attempted to hide the gun. The other factors under § 3553(a) also required an above-guidelines sentence: Mikulski had a "significant criminal record," his previous sentences had been less than two years in duration and "inadequate to deter him from further criminal activity," and he posed a recidivism risk because he lacked a high school diploma or GED. The judge acknowledged that Mikulski had a one-year-old child but explained that this relationship warranted only minimal mitigating weight, given that "concern for his family was not foremost on his mind when he was deciding" that "it was a good idea to go participate and initiate a shootout in a public park."

## II.

On appeal, Mikulski argues that the district judge misapplied the obstruction enhancement of U.S.S.G. § 3C1.1. That guideline authorizes a two-level increase in offense level if the defendant obstructed "the investigation … of the instant offense." Mikulski introduces on appeal a new theory as to why the enhancement should not apply: At the time he told his mother to hide the gun, he says, no federal investigation into his felon-in-possession charge had begun; only a state investigation into his aggravated-discharge offense was underway. Because his conduct did not impede the investigation "of the instant offense," he maintains, it cannot form the basis of an obstruction enhancement.

Because Mikulski raises this specific argument for the first time on appeal, we review it for plain error. *United States v. Olano*, 507 U.S. 725, 733–34 (1993); *United States v. Wyatt*, 982 F.3d 1028, 1030 (7th Cir. 2020). So, to prevail on appeal, Mikulski must show that the district judge committed an error, which was clear and obvious, affected Mikulski's

substantial rights, and seriously disturbed the fairness, integrity, and reputation of the judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009); *Wyatt*, 982 F.3d at 1030.

It was not plain error to apply the enhancement here. Section 3C1.1 allows a two-level enhancement when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation … of the instant offense of conviction." The Guideline does not distinguish between federal and state investigations in its application. This lack of distinction undoubtedly is based on a recognition "that state officers are authorized to and frequently do investigate criminal conduct that ultimately is prosecuted under federal law." *United States v. Alexander*, 602 F.3d 639, 642 (5th Cir. 2010) (citing *United States v. Self*, 132 F.3d 1039, 1042–43 (4th Cir. 1997)). In other words, the application of § 3C1.1 turns not on whether federal officials began the investigation, but whether the investigation was for the "instant offense." *Id.* The investigation here was for the instant offense of conviction—possession of a firearm by a felon. The state officials investigated Mikulski about his involvement in the shootout at the park, and Mikulski interfered with that investigation when he directed his mother to hide the gun. *See Alexander*, 602 F.3d at 642–43 (upholding enhancement for defendant who sought to obstruct state investigation by directing his father to hide the firearm that, later, he was federally convicted of unlawfully possessing).

Mikulski disagrees with this analysis, relying on *United States v. Perez*, 50 F.3d 396 (7th Cir. 1995), in which we ruled that a defendant had not obstructed an investigation into his

federal drug-distribution charge when, months before the filing of that charge, he fled the country to avoid a state prosecution for the same criminal offense. *Id.* at 398–99. Under *Perez*, Mikulski argues, his conduct during the state investigation cannot warrant an obstruction enhancement for his later federal offense, even if the state investigation related to the federal offense.

But *Perez* was based on a version of § 3C1.1 that has since been revised. *See Alexander*, 602 F.3d at 642 n.4 (noting that *Perez* is an outlier and, in any case, that it relied on a previous version of the Sentencing Guidelines). The former version expressly required that the obstructive conduct occur "during" the investigation of the instant offense. *Perez*, 50 F.3d at 398–99. This Guideline was amended in 2006 and no longer specifies that the conduct take place "during" the investigation. *See* U.S.S.G. § 3C1.1 (2018). Indeed, the commentary to § 3C1.1 clarifies that the enhancement now applies even if the obstructive conduct "occurred prior to the start of the investigation … if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1, cmt. n.1. We have not had occasion to revisit the holding in *Perez* in light of these revisions to § 3C1.1, but we now join every circuit to have considered the issue and hold that, under the current version of this provision, the enhancement "applies when the obstruction of the state investigation is based on the same facts as the eventual federal conviction, regardless of whether the federal investigation ha[d] commenced." *Alexander*, 602 F.3d at 642; *see also United States v. Ayers*, 416 F.3d 131, 133–35 (2d Cir. 2005) (collecting cases).

Mikulski also contends the enhancement does not apply to him because he did not impede the investigation. He maintains, as he did in the district court, that his phone call to his mother did not obstruct an investigation but in fact tipped off law enforcement to the presence of the gun.

As the district judge rightly observed, however, an obstruction enhancement is warranted even when the offender "attempted" unsuccessfully to hinder the investigation. U.S.S.G. § 3C1.1; *see United States v. Cisneros*, 846 F.3d 972, 976 (7th Cir. 2017) (construing § 3C1.1's reference to "attempted to obstruct" to "allow[] imposition of the enhancement whether or not the defendant was successful in the effort"). That Mikulski's overheard phone call may have precipitated the need for the search does not make the enhancement inapplicable when, as the judge observed, "the entire point" of his conduct was to conceal evidence. *See* U.S.S.G. § 3C1.1, cmt. n.4(D) (listing "directing … another person to … conceal evidence" as key example of obstructive conduct).

Finally, Mikulski argues there was insufficient justification for his above-guidelines sentence. In Mikulski's view, the judge's principal reason for the sentence—his discharge of the gun—was already reflected in the sentencing calculations, which included a four-level enhancement for his aggravated-discharge offense. We conclude that the judge's explanation was sufficient. The judge explained that an above-guidelines sentence was necessary to account for several § 3553(a) factors:

- *The circumstances of the offense*—Mikulski illegally possessed the gun for almost a year, he shot it in broad daylight at a busy park

where children were present, and only
"blind luck" prevented someone from
getting killed;

- *Post-offense conduct*—Mikulski instructed his
  mother to hide evidence, implicating her in
  the crime;

- *Specific deterrence*—Mikulski's prior sen-
  tences, which were less than two years, were
  "inadequate to deter him from further crim-
  inal activity";

- *General deterrence*—individuals who shoot a
  gun at a public park should know they will
  receive a "meaningful sentence"; and

- *Personal characteristics*—Mikulski presented
  with lack of education, recidivism risk, and
  "significant" criminal history.

## III.

Mikulski fails to identify an error in his sentence. The sen-
tencing enhancement for obstruction of justice was not mis-
applied, given Mikulski's efforts to hide the gun for which he
was convicted of unlawfully possessing. And the above-
guidelines sentence was more than adequately justified con-
sidering the sentencing factors of 18 U.S.C. § 3553(a). We
therefore AFFIRM.