In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 14-1508 & 14-2002

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

COREY GRIFFIN AND
TIMOTHY ALLISON,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cr-00741 — **John W. Darrah**, *Judge.*

ARGUED APRIL 6, 2015 — DECIDED MAY 21 , 2015

Before POSNER and SYKES, *Circuit Judges,* and SIMON, *Chief District Court Judge.*[*]

SIMON, *Chief District Judge.* Corey Griffin and Timothy Allison were charged with federal drug offenses arising from

---

[*]    Hon. Philip P. Simon of the Northern District of Indiana, sitting by designation.

an investigation of drug trafficking by the Traveling Vice Lords street gang which operated on Chicago's West Side. Griffin, Allison and their four co-defendants were part of the operation that sold heroin at two locations in Chicago—one at the intersection of Christiana and Chicago Avenues and the other at the intersection of St. Louis and Ohio Avenues. Allison and Griffin each pled guilty to conspiring between June 2008 and November 2010 to possess with intent to distribute and to distribute 1 kilogram or more of heroin. Allison was sentenced to a prison term of 288 months. Griffin received a sentence of 210 months. Their appeal raises three sentencing issues.

The government concedes that the district court committed reversible error at each sentencing by imposing discretionary supervised release conditions without explaining why the conditions for each defendant were reasonably related to the sentencing factors of 18 U.S.C. § 3553(a). *See United States v. Siegel*, 753 F.3d 705, 717 (7th Cir. 2014). "[T]he general rule with regard to conditions of supervised release now requires that they are to fit the peculiar circumstances of the defendant being sentenced." *United States v. Sewell*, 780 F.3d 839, 852 (7th Cir. 2015). "And being part of the sentence, the imposition of conditions of supervised release is subject to the further requirements that 'the court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence,' … and 'in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in' eight enumerated subsections of section 3553(a)." *United States v. Thompson*, 777 F.3d 368, 373 (7th Cir. 2015) (citing 18 U.S.C. §§ 3553(c), 3583(c)). We agree with the parties that the case must be reversed and remanded for

resentencing so that the sentencing court can make a record of the required considerations and findings.

Allison contends that due process was compromised when the sentencing judge pronounced Allison's sentence, then conferred with a probation officer and revised the prison term. No legal error is demonstrated, much less one of constitutional dimension. What occurred is that the judge misspoke (saying 240 months when he meant 24 years, which equals 288 months) but caught himself, consulted with the probation officer, and corrected his pronouncement of sentence. The record reflects that the judge's realization of his mistake occurred *before* he spoke to the probation officer. The judge announced even before their confab: "I'm going to amend that term of imprisonment." Allison Sentencing Tr., 83, Apr. 23, 2014, ECF No. 21-2. After the sidebar discussion, the judge continued: "I misspoke," explaining that "It was my intention and is my intention to sentence Mr. Allison to a term of imprisonment for 24 years. That would result in a sentence of 288 months." *Id*. There is nothing to suggest that the probation officer engaged in any advocacy off the record from which the defense was unfairly excluded, or that the lengthy explanation the judge had previously given as his statement of reasons was not intended to, and did not adequately support, the sentence of 288 months that he ultimately imposed. In any event, on remand the sentencing judge will have a fresh opportunity to state the sentence and the underlying rationale.

Finally, both Allison and Griffin contend that the district court used unreliable evidence when it attributed over 30 kilograms of heroin to the defendants for sentencing purposes. In making the factual determinations to be relied on for

sentencing, a district court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *see also United States v. Sandidge*, No. 14-1492, 2015 WL 1777480, at *5 (7th Cir. Apr. 20, 2015); *United States v. Hankton*, 432 F.3d 779, 789 (7th Cir. 2005). Beyond the Sentencing Guidelines, a defendant's due process rights include being sentenced on the basis of accurate information. *United States v. Bozovich*, 782 F.3d 814, 817 (7th Cir. 2015). "In applying that general principle, however, it is 'well-established that a preponderance of the evidence is all that is required for a factual finding of drug quantity under the Sentencing Guidelines, due process concerns notwithstanding.'" *Id*. at 818 (quoting *United States v. Medina*, 728 F.3d 701, 705 (7th Cir. 2013)).

The standard of review on appeal is clear error, a standard that has repeatedly been described as "highly deferential." *Bozovich*, 782 F.3d at 818; *United States v. Longstreet*, 567 F.3d 911, 924 (7th Cir. 2009); *Hankton*, 432 F.3d at 789. Reversal is required only where the record creates a "definite and firm conviction that a mistake has been made." *United States v. Ramirez*, No. 13-1013, 2015 WL 1654255, at *2 (7th Cir. Apr. 15, 2015).

No clear error is demonstrated in Judge Darrah's drug quantity computation. "Determining how much of a particular drug a defendant possessed, over a lengthy period of time, is not an exact science … . [A] district court is allowed to make reasonable estimates of drug quantity based on the record before it." *Sewell*, 780 F.3d at 849. Having pled guilty to

participation in a conspiracy to distribute and to possess with intent to distribute heroin, Griffin and Allison were "accountable for all quantities of contraband with which [they were] directly involved" and "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [they] jointly undertook." U.S.S.G. § 1B1.3 cmt. 2.

The district court found that both defendants were responsible for more than 30 kilograms of heroin. Under the 2012 Sentencing Guidelines, Allison's total offense level was found to be 40, and with a criminal history category of V, this yielded a Guidelines imprisonment range of 360 months to life. Allison was sentenced to 288 months, six years below the minimum of the Guideline range. Griffin's Guidelines range was 235 to 293 months, based on a total offense Level of 35 and a criminal history category of IV. He was sentenced to 210 months.

The finding of more than 30 kilograms of heroin is based on the premise that the user quantity sold on the street was .2 grams of heroin and that this amount sold for $10. (The parties call this a "blow.") The government tells us that there were 13 "blows" per pack and seven packs per bundle. But there was some confusion in the briefing because at points the government refers to ".2 grams per pack." *See*, *e.g.*, U.S. Br. 18. This discrepancy was discussed at oral argument and post-argument briefing was ordered. In that briefing the government indicates that its description of ".2 grams per pack" was a mistake, and instead .2 grams is the weight of a "blow." In their supplemental briefing both Allison and Griffin agree with the numerical building blocks of the drug quantity

computations. With that issue settled, here is the math as found by the district court:

**Heroin Sales at Each Drug Spot**:

13 blows per "pack" = 13 x .2 = 2.6 g per pack

7 packs per "bundle" = 7 x 2.6 = 18.2 g per bundle

3 bundles per day sold at the St. Louis-Ohio drug spot =

   3 x 18.2 g = **54.6 g/day at the StL-Ohio spot**

4 bundles per day sold at the Chicago-Christiana drug

   spot = 4 x 18.2 g = **72.8 g/day at the Chi-Chr spot**

**Defendant Allison:**

2 years at the StL-Ohio spot = 730 days

54.6 g/day at the StL-Ohio spot x 730 days = **39.8 kg**

**Defendant Griffin:**

1 year at the StL-Ohio spot = 365 days

54.6 g/day at the StL-Ohio spot x 365 days = 19.9 kg

   **PLUS**

7 months + 1 day at the Chi-Chr spot = 211 days

72.8g/day at the Chi-Chr spot x 211 = 15.3 kg

Griffin Total = 19.9 kg + 15.3 kg = **35.2 kg**

The math done by the district court is correct, and the only issue is whether the evidence supports it. Griffin and Allison challenge the district court's reliance on the testimony of co-defendants Jessica Ramey and Latoya Taylor. Their testimony impacted the drug quantity assessment because it factored into

the sentencing judge's determination of the numbers of packs and bundles sold at the two locations. Both witnesses had stored at their apartments the daily allotment of heroin for each location and were involved as both pack workers and bundle runners in the drug operation in which Allison and Griffin were higher-ups.[1] Their testimony generally demonstrated a credible familiarity with how the operation worked. Minor inconsistencies between Taylor's and Ramey's testimony do not add up to a failure of a preponderance of reliable evidence.

As to how many "bundles" of heroin were sold each day at the two drug locations, Ramey testified that 4 bundles per day was a typical total for the Chicago/ Christiana location and 4 to 5 bundles per day was typical for the St. Louis/Ohio location. Taylor testified that anywhere from 3 to 9 bundles a day were sold at the St. Louis/Ohio location. Ramey's narrower range of 4 to 5 bundles falls within Taylor's broader estimated range. In any event, the court's drug quantity calculation was done using the most conservative figure of 3 bundles per day sold at the St. Louis/Ohio location. The district court's computations based on 3 bundles per day at one location and 4 at the other were conservative in view of Ramey's and Taylor's testimony about larger numbers of bundles often being sold in a day's time.

The court's findings that 54.6 grams were sold per day at the St. Louis/Ohio location and 72.8 grams at the

---

[1] Pack workers sell blows on the street. Bundle runners receive bundles of heroin from those (such as Griffin and Allison) who package the heroin for sale, and pass packs on to the pack workers.

Chicago/Christiana location were also conservative when judged in view of other evidence. The testimony of Ramey and Taylor was not the only evidence of drug quantity in the record, which included Allison's statements to law enforcement in July 2009 and November 2010, admissions in connection with all six defendants' guilty pleas, and information from drug seizures and controlled buys.

Quantities of 150 grams and 120 grams are referenced in both Allison's and Griffin's plea agreements in contexts suggesting that those amounts represented a single day's inventory for sale at the two drug spots. Allison boasted in his statements to law enforcement about $5,000 in sales at each location. If a $10 blow is .2 grams, then $5,000 in sales is 100 grams sold at each location. Allison had further told law enforcement that the "owner" of the two drug locations supplied about 50 grams of uncut heroin for sale each day, and when packaged for street sales that amount would produce about 10 bundles of heroin. What's more, co-defendant Edmund Forrest's statement reported sales of $6,000 per day at the St. Louis/Ohio location and $3,000 per day at the Chicago/Christiana location. At $10 per .2 g blow, that's 120 g/day and 60 g/day, respectively. Although these various estimates differ from one another and from the figures the district court used, they show that the government's daily sales estimates (adopted by the district court) are relatively conservative and more than supported by a variety of information before the court.

"Determining drug quantities under the Sentencing Guidelines is often difficult, and district courts may make reasonable though imprecise estimates based on information

that has indicia of reliability." *Bozovich*, 782 F.3d at 818. Griffin and Allison demonstrate no error in the sentencing court's use of suitably reliable information in calculating reasonable estimates of the quantity of heroin attributable to each of them.

In light of our ruling above that a remand is necessary so that the judge can better explain the reasons for the conditions of supervision, the only remaining issue is what the scope of the remand should be. This court has recently observed that its decisions requiring reconsideration of supervised release conditions, but finding no other error, have sometimes resulted in limited remands and sometimes not. *United States v. Kappes*, 782 F.3d 828, 866 (7th Cir. 2015). *Kappes* goes on to note that there "might properly be an interplay between prison time and the term and conditions of supervised release," so that the resentencing on remand should not be limited to the term and conditions of supervised release, but the sentencing judge should be free to "alter the prison term and/or other conditions to ensure that the purposes of deterrence, rehabilitation, and protecting the public are appropriately furthered by the overall sentence." *Id*. at 867.

Even more recently we held: "Prison and fine, prison and restitution, and also prison and supervised release can as we've just noted be substitutes as well as complements. So if in this case on remand the judge narrows any of the conditions of supervised release or shortens their duration, he may wish to reexamine the prison sentence that he imposed … ." *United States v. Downs*, No. 14-3157, 2015 WL 2058735, at *2 (7th Cir. May 5, 2015).

We now follow *Kappes* and *Downs* and remand for full resentencing. If the judge chooses on remand to narrow or broaden the terms of supervision he may also review and alter the terms of incarceration as well.

We therefore AFFIRM the district court's drug-quantity determination, but VACATE the judgment of the district court and remand the case for resentencing consistent with this opinion.