In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-3778

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT RANJEL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 720-1 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED NOVEMBER 1, 2016 — DECIDED SEPTEMBER 29, 2017

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge*. In 2002 Robert Ranjel was indicted for participating in a Latin Kings drug-trafficking conspiracy operating in Aurora, Illinois. He fled to Mexico and remained there for nearly a decade. He surrendered in 2011 and a jury later convicted him of conspiracy and related drug crimes. The district judge imposed a sentence of 235 months in prison followed by a five-year term of supervised release.

Ranjel raises several claims of sentencing error. He argues that the judge (1) miscalculated the drug quantity; (2) misapplied a guidelines enhancement for his role as a manager or supervisor in the conspiracy; (3) misapplied a guidelines enhancement for obstruction of justice; (4) erroneously considered evidence of his involvement in a gang-related murder; and (5) failed to explicitly note that the guidelines recommended a three-year term of supervised release or explain why he opted for a five-year term.

We affirm. Ranjel waived the fifth claim of error. The others are meritless.

## I. Background

Ranjel was a member of the Latin Kings gang and was deeply involved in its drug-trafficking operation in Aurora, Illinois. In 2002 he was indicted for conspiracy to distribute controlled substances, *see* 21 U.S.C. § 846, and three counts of distributing cocaine, *see id.* § 841(a)(1). When the arrest warrant issued, Ranjel fled to Mexico and remained there for almost a decade. In 2011 he turned himself in to the U.S. Consulate in Monterrey, Mexico, and was returned to the United States. His case proceeded to trial the following year. The government's evidence included testimony from federal agents, a confidential informant, and several coconspirators, as well as recordings of wiretapped phone calls among the coconspirators. The jury convicted Ranjel on all counts.

The judge ordered a presentence report ("PSR") and specifically directed the probation office to "release the sentencing recommendation portion of the PSR" to both counsel. The judge also ordered counsel to file any objections or

corrections in writing, together with sentencing memoranda and position statements on the recommended conditions of supervised release.

The PSR estimated that the drug quantity attributable to Ranjel as relevant conduct was approximately 2.06 kilograms of cocaine. That translated to a base offense level of 26. As relevant here, the probation office recommended application of a three-level enhancement under U.S.S.G. § 3B1.1(b) for Ranjel's role as a manager or supervisor in the conspiracy. The probation office also recommended application of a two-level enhancement for obstruction of justice based on Ranjel's flight to Mexico and nearly ten years as a fugitive. *See* U.S.S.G. § 3C1.1. Finally, the PSR noted that the guidelines term of supervised release was three years but recommended that the judge impose a five-year term instead. The PSR also included specific recommendations for mandatory, discretionary, and special conditions of supervised release.

Ranjel's attorney filed a sentencing memorandum raising several objections to the PSR, but he did not object to any of the recommendations regarding supervised release. Moreover, in a separate filing entitled Position on Conditions of Supervised Release, Ranjel's attorney acknowledged that he had reviewed the PSR's recommendations and "makes no objection thereto."

At sentencing the judge ruled on counsel's objections, ultimately accepting the PSR's recommendations. The government then presented witnesses who testified about Ranjel's involvement in a gang-related murder. Ranjel had been charged with the murder but was acquitted. The judge nonetheless credited the testimony of the government's

witnesses and took the murder into account in weighing the sentencing factors under 18 U.S.C. § 3553(a). The judge imposed a sentence of 235 months in prison, the top of the guidelines range, and a five-year term of supervised release as recommended by the PSR. This appeal followed.

## II. Discussion

Ranjel limits his appeal to sentencing issues. Most are attacks on the judge's factual findings. That's a steep hill to climb. We will not disturb a sentencing court's factual findings unless they are clearly erroneous. *United States v. Austin*, 806 F.3d 425, 430 (7th Cir. 2015) (drug-quantity calculations reviewed for clear error); *United States v. Etchin*, 614 F.3d 726, 738 (7th Cir. 2010) (credibility determinations warrant "especially deferential" review); *United States v. Arceo*, 535 F.3d 679, 687 (7th Cir. 2008) (obstruction-of-justice findings are reviewed for clear error); *United States v. Hankton*, 432 F.3d 779, 793 (7th Cir. 2005) (a finding that the defendant had the role of a manager or supervisor is reviewed for clear error). Under the deferential clear-error standard, we will reverse only if "after reviewing the entire record, we are left with the firm and definite conviction that a mistake has been made." *United States v. Marty*, 450 F.3d 687, 689–90 (7th Cir. 2006) (quotation marks omitted).

## A. Drug Quantity

The judge adopted the PSR's estimate that Ranjel's offense conduct encompassed transactions totaling about 2.06 kilograms of cocaine. That figure was largely based on the trial testimony of Juan Corral, Ranjel's supplier, and frequent recorded phone calls between the two.

Corral described three distinct but overlapping groups of drug sales, each covering multiple weeks during the first half of 2002. The first series occurred from February 1 to March 31 and totaled 507 grams of cocaine. The second series started in the spring and continued through the end of June. Corral testified that during this period he sold Ranjel quarter-kilogram quantities of cocaine a "few times." The PSR estimated that a "few times" meant at least three, for a total of 750 grams. Finally, Corral testified that he sometimes sold Ranjel additional one-eighth kilogram quantities of cocaine. The recorded phone calls backed up this testimony, capturing sales of this quantity roughly every other week between April 1 and June 24, for a total of not less than 750 grams. The three subtotals sum to 2.007 kilograms (507 + 750 + 750 = 2007 grams). In addition to these transactions, Ranjel also sold approximately 49 grams of cocaine to confidential informants in three separate transactions, bringing the combined total to 2.06 kilograms.

Ranjel challenges these calculations, arguing that the 750-gram subtotal was double-counted. Not so. The PSR made clear that the identical subtotals were based on two separate sets of transactions with Corral, and the frequency and amounts of these separate sales were corroborated by recorded phone calls.

Ranjel argues more generally that the drug-quantity calculations were based on unreliable or imprecise evidence. In particular, he attacks Corral's testimony, which he says was vague and marred by poor memory given the passage of time. Ranjel can hardly seek refuge in the passage of time, for which he is solely responsible. Regardless, calculating drug quantities is "often difficult, and district courts may

make reasonable though imprecise estimates based on information that has indicia of reliability." *United States v. Bozovich*, 782 F.3d 814, 818 (7th Cir. 2015); *see also United States v. Araujo*, 622 F.3d 854, 863–64 (7th Cir. 2010) (holding that the extrapolation of drug amounts "is permissible so long as it is based on reliable data regarding the size and frequency of the defendant's transactions"). Corral was Ranjel's main supplier, and his testimony was corroborated by more than 75 recorded phone calls between the two. And on this record the 2.06-kilogram total is a conservative estimate. The evidence showed that Ranjel used other co-caine suppliers in addition to Corral and also that he sold marijuana and prescription pills, neither of which was added to the total drug quantity. We find no error.

**B. Sentencing Enhancements**

Ranjel next challenges the application of the guidelines enhancement for his role as a manager or supervisor in the conspiracy. The guidelines recommend a three-level upward adjustment to the base offense level "[i]f the defendant was a manager or supervisor … and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). The judge applied this adjustment based on trial testimony establishing that Ranjel personally di-rected at least three other coconspirators to package, distrib-ute, or sell cocaine to various buyers. Other testimony established that the Latin Kings drug-trafficking conspiracy involved far more than five people.

Ranjel argues that the judge erroneously found that he "managed five participants in a criminal activity." But the judge made no such finding; nor was he required to. The enhancement applies if the defendant managed or super-

vised "one or more other participants" in criminal activity that *involved* five or more people. § 3B1.1 cmt. n.2. Trial evidence established that Ranjel directed one coconspirator to hold drugs, another coconspirator to sell drugs, and a third coconspirator to deliver cocaine to various retailers, collect payment, and deliver the money to him. In other words, Ranjel "exercised some control over others involved in the commission of the offense," which is enough to apply the § 3B1.1(b) enhancement. *United States v. Pagan*, 196 F.3d 884, 892 (7th Cir. 1999) (quotation marks omitted).

Nor was it error to hold Ranjel accountable for obstruction of justice. *See* § 3C1.1. His flight to Mexico and nearly ten years as a fugitive easily qualifies as obstruction of justice, drawing a two-level enhancement under § 3C1.1. Ranjel argues that the government was not prejudiced by his fugitive status because federal drug agents knew where he was and could have extradited him if they wanted to. He also argues that his flight to Mexico did not impose additional costs on the government or otherwise affect the government's case in any concrete way. Actual prejudice is not needed. "[S]ection 3C1.1 applies to those defendants who *attempt* to obstruct or to impede the administration of justice, as well as to those who actually succeed in doing so." *United States v. Porter*, 145 F.3d 897, 904 (7th Cir. 1998) (emphasis added).

Fleeing to another country is always "likely to burden a criminal investigation or prosecution significantly—likely to make the investigation or prosecution significantly more costly or less effective than it would otherwise have been." *United States v. Nduribe*, 703 F.3d 1049, 1053 (7th Cir. 2013). Moreover, although proof of actual prejudice is not required,

here the government established that Ranjel's Mexican sojourn imposed some real costs: A cooperator who purchased cocaine from Ranjel died while Ranjel was at large; drugs had to be retested because the crime lab kept its notes for only ten years; and government agents and law-enforcement witnesses retired or were no longer with their agencies by the time Ranjel faced trial, making them more difficult to locate. The judge properly applied the enhancement for obstruction of justice.

## C. Ranjel's Involvement in a Gang-Related Murder

At sentencing the government called three witnesses who testified to Ranjel's involvement in a 1990 murder of a rival gang member. According to these witnesses, Ranjel and two fellow Latin Kings drove to the victim's home, and each fired a gun into the house, killing the victim. Ranjel was tried for this murder and acquitted. Even so, an acquittal does not preclude the judge from considering the underlying conduct for sentencing purposes as long as the government proves the conduct by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 156–57 (1997).

Ranjel does not contest the legal point. Rather, he argues that the government relied in part on a written proffer from a coconspirator, which is hearsay, and its witnesses "were admitted perjurers." But hearsay is permissible at sentencing. *See United States v. Grigsby*, 692 F.3d 778, 787 (7th Cir. 2012). And the judge acknowledged that "[a]ll three witnesses are convicted felons" who "told lies at times to the government officials, police officers and others." He also recognized that the witnesses "eventually cooperated with the government and received reduced sentences based on those

cooperations." Nonetheless, the judge found their testimony credible.

A sentencing judge's credibility determinations are entitled to exceptional deference. *United States v. Johnson*, 342 F.3d 731, 735 (7th Cir. 2003). It was the judge's job to take the measure of the government's witnesses, accounting for the various reasons to doubt their testimony. The judge did so here. He found the witnesses believable and considered this evidence in weighing the § 3553(a) sentencing factors. There was no error.

### D. Supervised Release

Finally, Ranjel argues that the judge committed a procedural error by failing to expressly calculate and state for the record that the guidelines term of supervised release was three years. He also contends that the judge did not adequately explain his decision to impose an above-guidelines term of five years. The government responds that Ranjel waived these arguments by failing to raise them in the district court when he was explicitly invited to object.

Waiver is the intentional relinquishment of a known right. *United States v. Bloch*, 825 F.3d 862, 873 (7th Cir. 2016). We have encouraged judges to provide advanced notice to the parties of the contemplated term and conditions of supervised release. *See United States v. Kappes*, 782 F.3d 828, 842–44 (7th Cir. 2015). Notice eliminates surprises at the hearing and allows the defendant to "present an informed response" to the proposed term and conditions. *Id.* at 843. The sentencing hearing is the "main event," and when notice is given before the hearing, the parties can "prepare and

identify the issues they wish to address" ahead of time. *United States v. Lewis*, 823 F.3d 1075, 1083 (7th Cir. 2016).

Ranjel faced a statutory minimum three-year term of supervised release and a maximum of life. *See* 21 U.S.C. §§ 846, 841(b)(1)(C). The PSR gave him ample notice that the guidelines recommended the minimum three-year term. *See* U.S.S.G. § 5D1.2. The probation office expressly recommended that the judge impose a five-year term instead, and this part of the PSR was released to Ranjel's counsel. The judge ordered the parties to file written objections in advance of the sentencing hearing. Ranjel did so, raising several objections. But he did not object to the calculation of the guidelines term of supervised release or the specific recommendation of an above-guidelines term of five years. And in a separate filing specifically responding to the proposed conditions of supervised release, counsel expressly acknowledged that he had reviewed the recommendations and "makes no objection thereto."

At the sentencing hearing, the judge asked Ranjel's attorney if he had any further objections to the PSR other than those in his sentencing memorandum. Counsel confirmed that he did not. Near the end of the hearing, the judge asked Ranjel's attorney if he—the judge, that is—had "considered all of [his] arguments." Counsel confirmed this as well. After imposing sentence, the judge asked if Ranjel's attorney wanted to raise any other issues. Counsel said, "no."

In short, "[t]here were no surprises" at this sentencing proceeding—certainly not on any aspect of supervised release. *Lewis*, 823 F.3d at 1082. The judge gave Ranjel multiple opportunities to object to the recommended term of supervised release; he never did. We have no difficulty

concluding that Ranjel waived any procedural or substantive challenge to the five-year term of supervised release.

AFFIRMED.