NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 8, 2018
Decided August 22, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 17-3515

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*,<br><br>    *v*.<br><br><br>RUDOLPH CALLASO, also known<br>as RUDY,<br>    *Defendant-Appellant*. | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division.<br><br>No. 15 CR 598-1<br><br>Sara L. Ellis,<br>    *Judge*. |

**O R D E R**

Rudolph Callaso pleaded guilty to conspiring to distribute and possess with intent to distribute heroin. *See* 21 U.S.C. §§ 841(b)(1)(C), 846. At sentencing the district judge found based on the grand-jury testimony of a co-conspirator that Callaso's relevant conduct involved about 140 grams of heroin. The judge also determined based on hearsay testimony that Callaso obstructed justice by intimidating that co-conspirator from testifying at a hearing. Callaso challenges both findings. Because the disputed evidence had sufficient indicia of reliability, we affirm the judgment.

Callaso and Anthony Murray conspired to sell heroin. Murray brokered the deals, and Callaso provided the heroin. Callaso admits that two such deals took place and that he supplied slightly under 20 grams of heroin each time. For one of the deals, Callaso supplied the heroin on a day's notice and sent his associate to exchange the drugs for cash.

Murray testified before a grand jury and imputed a far more expansive role to Callaso. He testified that Callaso supplied him with 20 grams of heroin on six or seven occasions and that Callaso usually "had his guy … handle the actual delivery." Murray's testimony was consistent with statements he made to law enforcement after his own arrest. The grand jury indicted Callaso.

During discovery, the government provided Callaso and his attorney with confidential materials that were subject to a protective order. The discovery materials included the transcript of Murray's grand jury testimony and a video of Murray's post-arrest interview in which he cooperates with police.

Murray was supposed to testify again at an evidentiary hearing on Callaso's relevant conduct, but according to Murray's lawyer Alan Brunell, he was intimidated when Callaso leaked the discovery materials. Brunell said that Murray's friends and family had been confronted by unnamed persons possessing screenshots of the transcript of Murray's grand-jury testimony as it appeared on Callaso's account on Instagram (an online social networking service). Apparently, Callaso had taken pictures of the transcript and sent them to himself via Instagram's private, direct messaging function. In addition, Brunell continued, the video of Murray's post-arrest interview appeared on Facebook (another online social networking service) within months of the government disclosing it to Callaso. The government maintained that it did not disclose these discovery materials to anyone besides Callaso and his attorney.

Callaso's counsel responded to Brunell's testimony by speculating about how the materials became public without Callaso's involvement. He suggested that Callaso's Instagram account may have been hacked. And he proposed that Murray's friends and family fabricated a story about seeing Murray's interview on Facebook.

The district judge sentenced Callaso to 48 months' imprisonment. She assessed the relevant heroin quantity at 140 grams (corresponding to a base offense level of 24, *see* U.S.S.G. § 2D1.1(c)(8)), given Murray's testimony that Callaso supplied 20 grams of heroin on six or seven occasions. She reasoned that it was "unlikely" that Callaso twice could provide heroin to Murray had they not had an ongoing relationship. Murray's

testimony at the grand jury was under oath, the judge noted, and it was consistent with his earlier reports to police. She then applied a two-level increase for obstruction of justice based on Brunell's statements at the evidentiary hearing that Callaso intimidated Murray from testifying. *See* U.S.S.G § 3C1.1. The judge said that the public disclosure of discovery materials was "serious," and that she "[had] yet to hear a good explanation for how this information got out that doesn't circle back to Mr. Callaso." She sentenced Callaso below the Guidelines range (57 to 71 months) because he had "a lot to offer" to his family and community and had never spent time in custody.

On appeal Callaso argues that the district judge erred when she credited Murray's grand jury testimony and found that Callaso's relevant conduct involved 140 grams of heroin, rather than the 38.8 grams to which he pleaded guilty. Had he been found accountable for 38.8 grams, he would have faced a Guidelines range of only 24 to 30 months. *See* U.S.S.G. §§ 2D1.1(c)(12), Ch. 5, Pt. A.

Because Murray's testimony had sufficient indicia of reliability the judge did not err by relying on it. *See* U.S.S.G. § 6A1.3; *United States v. Griffin*, 806 F.3d 890, 892 (7th Cir. 2015). For one, consistent statements from a witness suggest that those statements are reliable, *see United States v. Clark*, 538 F.3d 803, 812–13 (7th Cir. 2008), and Murray's grand jury testimony mirrored his reports to police that Callaso typically used an associate to make 20-gram deliveries of heroin. Moreover, Callaso admitted that he twice provided heroin to Murray and that he could do so on a day's notice; Murray's testimony is corroborated by his familiarity with Callaso and Callaso's access to drugs that he could quickly provide. *See United States v. Medina*, 728 F.3d 701, 706 (7th Cir. 2013) (drugs and money found in defendant's possession corroborate absent witness's testimony about the extent of the conspiracy). And though Murray's statements may have been hearsay, he made them under oath in a formal proceeding, rendering them "particularly reliable." *United States v. Crockett*, 82 F.3d 722, 727 (7th Cir. 1996). Callaso insists that more corroboration is necessary, but "sentencing evidence need not be fully corroborated for a district court to credit it." *United States v. Sandidge*, 784 F.3d 1055, 1062 (7th Cir. 2015).

Callaso next argues that Murray's testimony was untrustworthy in light of Murray's substantial criminal record—three prior criminal convictions for violent offenses, including one for second-degree murder. But the judge was permitted to rely on his testimony regardless. A judge at sentencing may credit testimony that "comes from an admitted liar, convicted felon, large scale drug-deal[er], paid government informant, or self-interested co-conspirator." *United States v. Thurman*, 889 F.3d 356,

370–71 (7th Cir. 2018) (quoting *United States v. Isom*, 635 F.3d 904, 908 (7th Cir. 2011)); *see also United States v. Ranjel*, 872 F.3d 815, 820–21 (7th Cir. 2017) (credited witness known to have lied to police); *Clark*, 538 F.3d at 812–13 (credited "admitted perjurer"). Murray's history of violent offenses did not require the judge to disregard his testimony.

Callaso also questions the veracity of Murray's statements because Murray, who testified in front of the grand jury but not at the evidentiary hearing, was not subject to cross-examination. His unavailability, however, is of no effect. A judge can credit an unavailable witness's testimony. *See Medina*, 728 F.3d at 706. And the judge found that Callaso intimidated Murray and thus was responsible for his unavailability, so Callaso cannot point to Murray's absence as reason to discredit him. *See Ranjel*, 872 F.3d at 819.

Finally, Callaso argues that the judge erred in applying a sentencing enhancement for obstruction of justice based on attorney Brunell's hearsay testimony about the Instagram screenshots and Facebook posts. But judges may rely on hearsay to apply sentencing enhancements. *See* FED. R. EVID. 1101(d)(3). Indeed, "hearsay testimony from a single witness, and not the strongest hearsay testimony," may suffice to support a sentencing enhancement for obstruction of justice. *See United States v. House*, 551 F.3d 694, 700 (7th Cir. 2008). And here, the government corroborated Brunell's testimony by submitting copies of the Instagram screenshots that Brunell discussed. *See United States v. Sewell*, 780 F.3d 839, 849–50 (7th Cir. 2015) (drug-dealing materials found during search corroborated hearsay testimony regarding drug quantity). Also, that the videos purportedly surfaced on Facebook soon after Callaso obtained them is a corroborative detail suggesting that Brunell's testimony is reliable. *See Sandidge*, 784 F.3d at 1062–63. Callaso says on appeal that Brunell's testimony is unreliable because the Facebook posts would have "spread" if they actually existed, but that argument is too speculative to overcome the "exceptional deference" that this court gives to the district judge's credibility determination. *See Ranjel*, 872 F.3d at 821.

AFFIRMED