In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 22-2268

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GILBERT DEAN BICKNELL,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:20-cr-40046 — **Sara Darrow**, *Chief Judge*.

_____

ARGUED MAY 31, 2023 — DECIDED JULY 19, 2023

_____

Before ROVNER, HAMILTON, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. In *Brady v. Maryland*, the Supreme
Court established that the government violates a criminal de-
fendant's right to due process when it suppresses evidence
favorable to the defendant. 373 U.S. 83, 87 (1963). A decade
later, in *Giglio v. United States*, the Court confirmed that
*Brady*'s disclosure requirement applies to evidence that could
be used to impeach a government witness. 405 U.S. 150, 154–
55 (1972). While *Brady* and *Giglio* recognize important

protections for criminal defendants, the government's failure to adhere to their mandate does not result in automatic relief. Rather, a defendant must show that undisclosed information was "material either to guilt or to punishment." *Brady*, 373 U.S. at 87; see also *Giglio*, 405 U.S. at 154–55.

That caveat—*Brady*'s materiality requirement—explains the result here. Gilbert Bicknell was left completely in the dark about evidence that would have been useful to impeach a witness who testified against him at sentencing. That evidence would not have affected the outcome of his sentencing, though, so the government's failure to disclose does not lead to relief under *Brady* or *Giglio*.

But make no mistake: the government's failure to adhere to its disclosure obligation deeply troubles us. It failed to inform a criminal defendant before sentencing that one of the government's key witnesses—the defendant's own son— would be testifying pursuant to a cooperation agreement. That agreement was a textbook example of *Giglio* information, and it is very unsettling that more care was not taken to ensure its disclosure before sentencing. Though we must affirm, we do so reluctantly.

## I

### A

In July 2020 police observed Gilbert Bicknell and his son Michael at a gas station in Edwards, Illinois. Gilbert gave Michael a brown package that police later discovered contained methamphetamine. Michael left the gas station in his car, followed by Gilbert in his truck and the police in three squad cars. When the police saw Michael commit a minor traffic violation, they activated their lights and sirens. One squad car

quickly passed Gilbert's truck and sped after Michael's car. Before the other cars could follow suit, Gilbert swerved over the center line of the road, briefly preventing the officers from passing his truck. He then pulled over, and the remaining squad cars passed to follow Michael. In time a federal indictment followed, charging Gilbert and Michael with possession with intent to distribute methamphetamine. See 21 U.S.C. § 841(a)(1), (b)(1)(A).

Gilbert pleaded guilty in August 2021. In an effort to avoid the mandatory minimum sentence of ten years, Gilbert contended that he should be considered eligible for so-called safety-valve relief pursuant to 18 U.S.C. § 3553(f), which authorizes a district court to impose a sentence below the otherwise statutory mandatory minimum in narrow circumstances. Specifically, § 3553(f) applies only to low-level defendants charged with certain drug crimes who "truthfully provide[ ] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." § 3553(f)(5). Gilbert claimed he was truthful in his safety-valve proffer—the interview where he could provide information to the government—and should therefore receive relief from § 841(b)(1)(A)'s mandatory minimum ten-year sentence.

The government disagreed, taking an altogether different view of Gilbert's candor during the safety-valve proffer. The government believed Gilbert failed to own up to the full extent of his criminal conduct. It justified this opposition in part with information it had obtained from Michael, who had given a similar proffer. Michael's proffered testimony— which the government gave Gilbert a redacted copy of—

implicated Gilbert in criminal conduct beyond what Gilbert had been willing to acknowledge during his own proffer. Separate and apart from its opposition to safety-valve relief, the government requested an obstruction-of-justice enhancement based on Gilbert's purported efforts to interfere with the police's pursuit of Michael during the brief car chase.

What happened next gave rise to the government's alleged failure to adhere to its *Brady* and *Giglio* obligations. In February 2022, while Gilbert was awaiting sentencing, Michael pleaded guilty pursuant to a plea agreement in which he agreed to cooperate with the government, including by providing information about his father Gilbert's criminal conduct. Perhaps owing to a clerical oversight, the plea agreement itself was not entered into the district court's docket. The docket did include a minute entry stating that Michael entered a guilty plea, but it did not specify that the plea was pursuant to a written agreement. The government never disclosed the agreement to Gilbert or his lawyer.

B

The district court set Michael and Gilbert's sentencing hearings for the same date—July 7, 2022. At Gilbert's hearing, the government called Michael to testify against his father. Michael's testimony aligned with his proffer, implicating Gilbert in more criminal activity than Gilbert himself had been willing to acknowledge. The prosecutor also elicited testimony that Michael had pleaded "open"—without the benefit of a written plea agreement. The district court sought clarification on this point, and Michael again testified that he had no written plea agreement.

To be sure, Michael's repeated assertions that he pleaded open were untrue. Making matters worse, the prosecutor who elicited this testimony was the very same one who signed Michael's plea agreement in February 2022.

The district court seemed to sense that something was amiss and, during a break in the proceedings following Michael's testimony, managed to locate the written plea agreement. The district court then informed the parties of the discovery. Still, Gilbert's lawyer did not move to recall Michael as a witness for further cross examination.

Yet that is not all that came out of the sentencing hearing. Michael had also acknowledged on direct examination that he was testifying against his father in the hope of receiving a reduced sentence. Gilbert's lawyer never followed up on this testimony by probing Michael's motivations for testifying. Nor did he ever ask Michael whether, contrary to his direct-examination testimony, he had entered into a cooperation agreement with the government.

The government had called a second witness too—the case agent who had conducted Gilbert's safety-valve proffer. The agent testified to his own observations from that interview, explaining that Gilbert had tried to minimize his own criminal conduct and that he generally came across as not credible.

At the close of the hearing, the district court found that, on the whole, Michael gave credible testimony. After reaching the same conclusion about the case agent's testimony, the district court denied Gilbert's request for safety-valve relief.

Before concluding, the district court also addressed the government's request for an obstruction-of-justice enhancement. The district court found that the government had not

met its burden of showing that Gilbert intentionally obstructed the officers who were trying to apprehend Michael when he swerved across the center line of the road during his initial encounter with police in July 2020. But the district court made plain that Gilbert's conduct (specifically, his failure to immediately pull over) remained troubling and demonstrated a lack of respect for authority. The court later considered this very same conduct as an aggravating factor when setting Gilbert's sentence. See 18 U.S.C. § 3553(a)(1) (requiring district courts to consider "the history and characteristics of the defendant" at sentencing).

In the end, the district court sentenced Gilbert to 156 months. Gilbert now appeals, challenging both the government's failure to disclose Michael's plea agreement and what he sees as inconsistent findings of fact regarding his failure to pull over while driving.

## II

### A

On appeal the government acknowledges that Michael's plea agreement is exactly the kind of impeachment evidence that is covered by *Giglio*. And it is well-established that "*Brady* applies to sentencing." *United States v. Severson*, 3 F.3d 1005, 1013 (7th Cir. 1993).

From there it should have been clear as day that the government had an "affirmative duty to disclose" the plea agreement in advance of Gilbert's sentencing. *Anderson v. City of Rockford*, 932 F.3d 494, 504 (7th Cir. 2019); *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (highlighting "the prosecution's broad duty of disclosure" even while recognizing "that not every violation of that duty necessarily establishes that the outcome

was unjust"). The Supreme Court has instructed that "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *United States v. Agurs*, 427 U.S. 97, 108 (1976); see also *Connick v. Thompson*, 563 U.S. 51, 66–67 (2011) ("Prosecutors are not only equipped but are also ethically bound to know what *Brady* entails and to perform legal research when they are uncertain."). "Such disclosure will serve to justify trust in the prosecutor as 'the representative … of a sovereignty … whose interest … in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *Kyles v. Whitley*, 514 U.S. 419, 439 (1995) (alterations in original) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

But nondisclosure does not automatically entitle a defendant to relief on appeal. The withheld evidence must be material, meaning there must be "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 582 U.S. 313, 325 (2017) (quoting *Cone v. Bell*, 556 U.S. 449, 470 (2009)). In the context of impeachment evidence, we must assess "the overall strength of the prosecution case, the importance of the particular witness's credibility to the prosecution case, the strength of the concealed impeachment material, and how the concealed material compares to other attacks the defense was able to make on the witness's credibility." *Sims v. Hyatte*, 914 F.3d 1078, 1089 (7th Cir. 2019); see also *Turner*, 582 U.S. at 324–25 (instructing courts to review undisclosed evidence "in the context of the entire record" (quoting *Agurs*, 427 U.S. at 112)).

This is where Gilbert's position falls short. No doubt Michael's plea agreement would have been useful impeachment evidence, as it would have definitively shown that he was cooperating with the government and, in the interest of

receiving a reduced sentence, may have had an incentive to slant his testimony. But the fact that Michael testified as a government witness was itself enough to make plain to anyone at the hearing—including Gilbert, his lawyer, and the district court—that he was cooperating with the government. Remember too that Michael admitted his desire for a reduced sentence while on the witness stand.

Michael's stated hope for a lesser sentence gave Gilbert's lawyer ample ammunition to cross-examine Michael on his credibility even without the plea agreement. Indeed, the agreement would have been duplicative of those same lines of questioning. See *United States v. Morris*, 498 F.3d 634, 640 (7th Cir. 2007) (holding that a prosecutor's incorrect statements that a cooperating witness would remain subject to the statutory minimum sentence were immaterial where it was clear "that [the witness] was receiving a substantial benefit for his testimony and, more importantly, that he had strong incentives to please the government"). Gilbert's lawyer opted not to challenge Michael's credibility based on the information he had available to him, but his decision not to use that evidence does not make the plea agreement any less cumulative.

Further weakening Gilbert's position, this is not a circumstance where "the prosecution had no case" without Michael's testimony. *Sims*, 914 F.3d at 1089; see also *Giglio*, 405 U.S. at 154 ("[W]ithout [the challenged testimony] there could have been no indictment and no evidence to carry the case to the jury."). In addition to relying on Michael's testimony, the district court gave meaningful weight to the testimony of Gilbert's case agent, which separately undermined Gilbert's safety-valve proffer. Indeed, the district court relied on

Michael's testimony only "as it [was] consistent, per the agent's testimony, with other information that [the agent] obtained during his investigation."

It is also important to highlight that this all happened at sentencing, where the district court—rather than a jury—sat as the finder of fact. Given the district court's extensive experience with sentencing hearings like this one, we can say with sufficient confidence that Michael's incentives to cooperate with the government, including by testifying against his father, were apparent when the court ruled on Gilbert's safety-valve eligibility. Furthermore, the district court became aware of Michael's plea agreement before imposing Gilbert's sentence. Had the district court thought the plea agreement raised new, *material* questions about Michael's credibility, it could have reopened the record and given Gilbert's lawyer a chance to further cross-examine Michael. That the district court did not do so suggests that the plea agreement did not affect its analysis very much, and we defer to the district court's weighing of this kind of evidence at sentencing. See *United States v. Ranjel*, 872 F.3d 815, 818 (7th Cir. 2017).

After taking our own hard look at everything that transpired here, we simply do not see a reasonable probability that a timely disclosure of Michael's plea agreement would have changed the outcome of Gilbert's sentencing hearing. In short, the agreement was not material, so there was—technically speaking—no *Brady* or *Giglio* violation. See *Strickler*, 527 U.S. at 281–82.

## B

One brief issue remains. Gilbert contends that the district court made inconsistent findings of fact regarding his driving

during the brief car chase on the day of the drug transaction. Recall that the district court rejected the government's attempt to impose an obstruction-of-justice enhancement but later relied on the same underlying facts as an aggravating factor in setting Gilbert's sentence. Gilbert sees these results as incompatible with one another.

We disagree. The fact that the district court agreed with Gilbert on the bottom line with respect to the obstruction enhancement does not mean the district court needed to accept Gilbert's preferred narrative down to every last detail.

Nor do we see any tension in the district court's conclusions. The obstruction enhancement requires a defendant to *intend* to obstruct justice, see U.S.S.G. § 3C1.1, and the district court found the evidence did not prove Gilbert's intent. But intent to obstruct justice is not necessary under § 3553(a), which looks more broadly at the "history and characteristics of the defendant." So Gilbert's failure to pull over when chased by police cars with their lights and sirens on could still establish that, as the district court put it, he "was not succumbing to the authority that was being shown at that time."

## III

The result in this case is in many ways unsatisfying. The government failed to disclose clear *Giglio* material. And we worry that the government will react to the bottom line of this opinion by breathing a sigh of relief and seeing the appeal as some type of win. That would badly miss the mark. The only acceptable way for the government to respond to what happened here is to use this case as an opportunity to take steps to underscore within its ranks that there is no excuse—certainly not busyness or heavy caseloads—for failing to

diligently abide by the disclosure demands imposed by *Brady* and *Giglio*. Far too much is at stake in criminal law for the government to not attend to its disclosure obligations with more care and attention.

With this parting emphasis, we AFFIRM.