In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 24-1228 & 24-1229

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WESLEY K. WHITE, JR.,

*Defendant-Appellant.*

Appeals from the United States District Court for the
Southern District of Illinois.
Nos. 3:21-cr-30053 & 3:22-cr-30029 — **David W. Dugan**, *Judge.*

ARGUED OCTOBER 28, 2024 — DECIDED JANUARY 28, 2025

Before ROVNER, BRENNAN, and KOLAR, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Wesley K. White pleaded guilty to two counts of unlawful possession of a firearm under 18 U.S.C. § 922(g)(1). In a plea agreement, the government promised to recommend a sentence at the low end of the guidelines range. But while out of custody pending sentencing, White again violated federal law. In response, the government moved to be released from its sentencing recommendation.

The district court granted the motion and sentenced White to a prison term exceeding his guidelines range. On appeal, White disputes that he breached the plea agreement and challenges his above-guidelines sentence. We affirm the district court in full.

## I.

### A. Charges of Felon in Possession of Firearm

Before the conduct at issue in this case, White had pleaded guilty and was placed on 24 months' probation for a felony firearms offense in Illinois state court. Six months later, during 2018, state police and county probation agents conducted a compliance check at his residence. They searched White's bedroom and discovered a semiautomatic assault rifle, two 40-round magazines containing ammunition, and various firearm accessories. White denied owning the rifle but eventually admitted his fingerprints were on the weapon because he had handled it.

Then, in 2020, an agent from the state police saw a Facebook Live video tagging White's account. The video showed White handling and firing a semiautomatic pistol and a Glock pistol at a shooting range. Agents later interviewed White about the guns in the video. During a break, agents left the room, and White placed a phone call that was recorded by room surveillance. White spoke to an unknown individual, telling that individual to text a third person to "move that shit."

During a second interview less than a month later, agents again asked about the guns. White admitted he fired the two pistols at the shooting range as the video depicted, but he said neither pistol was at his residence. Agents told White they

intended to search his house and left the interview room. Room surveillance again captured White calling an unknown individual to discuss the contents of a "brown bag." White placed a second call and directed the individual to move the brown bag into the freezer.

Upon returning to the interview room, agents confronted White about the brown bag. He admitted it contained "weed." He also revealed that he placed the phone call during his first interview to arrange for someone to remove a handgun from his bedroom to give to his brother. White then recanted that statement and admitted he "traded" the gun "on the streets." After this interview, agents searched White's residence and discovered ammunition, loaded and unloaded magazines, and a gun case.

White was indicted for his 2018 and 2020 felon-in-possession conduct. He pleaded guilty to both offenses pursuant to a written plea agreement. The agreement anticipated a sentencing guidelines range between 121 and 151 months on each count. In exchange for White's guilty pleas, the government promised to seek a sentence at the low end of the guidelines range.

The plea agreement also clarified the limitations and consequences for breaching the agreement:

> If the Defendant commits any violation of local, state or federal law (other than a petty traffic offense), violates any condition of release, violates or fails to perform any term of this Plea Agreement, provides misleading, incomplete, or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the

> United States, at its option, may ask the Court to be released from its obligations under this Plea Agreement.

After pleading guilty, the court permitted White to remain on bond before his sentencing hearing.

### B. Relief from Sentencing Recommendation

While White awaited sentencing in federal court, the St. Louis, Missouri Circuit Attorney's Office charged White with first degree murder for shooting Tamera Plummer, the mother of one of his children. Two days later, federal authorities moved to revoke White's bond. They also filed a notice to withdraw from the sentencing recommendation in the plea agreement, requesting permission to "advocate for any sentencing position supported by the facts." The government argued that the Missouri state charges against White showed he had violated state law.

At White's sentencing hearing, the district court first addressed his objections to the Presentence Investigation Report ("PSR"). White contested the report's (1) failure to apply a three-point reduction to his sentencing guidelines calculation for accepting responsibility under U.S.S.G. § 3E1.1, and (2) allegation of first-degree murder made against him in Missouri. The district court overruled White's objections and allowed the government to present evidence about the Missouri murder charge. White made no further objections to the PSR before or during sentencing. Relevant here, White did not object to or contest three separate instances described in the PSR of his use and possession of marijuana while on bond. The district court later found that those instances constituted violations of federal law.

As part of its presentation on the Missouri murder charge, the government submitted evidence about emails Plummer sent to state and federal authorities between mid-August and mid-November of 2022. In those emails, Plummer accused White of threatening her with a firearm and attached photos and one video showing White in possession of a firearm.

The district court ruled that the email with the video attachment was admissible and showed that White violated federal law by possessing a firearm as a felon. But the district court was concerned about making a finding on the Missouri murder charge because it could "raise[] serious concerns for Mr. White's right to have a fair and impartial jury." Exercising its discretion, the court declined to make "a finding at all" on that charge.

Instead, the district court concluded that the evidence of White's drug and gun possession presented at the hearing demonstrated that he violated 21 U.S.C. §§ 812(c)(10) and 844, and 18 U.S.C. § 922(g)(1), and thus he was in breach of the express terms of the plea agreement. The court therefore granted the government's motion to withdraw from the portion of the plea agreement that required it to recommend a sentence at the low end of the guidelines.

### C. Above-Guidelines Sentence

The district court calculated a guidelines range of 97 to 121 months for each of White's felon-in-possession offenses. The government advocated for a term of 180 months. The district

court considered White's case under the 18 U.S.C. § 3553(a) factors and imposed an aggregate sentence of 194 months.[1]

## II.

White makes two sentencing-related arguments on appeal. First, he contends it was procedural error to find he breached the plea agreement. Second, he argues his sentence was substantively unreasonable because the district court considered unreliable evidence from Plummer's emails.

Sentencing decisions are reviewed in two steps. First, we ask whether the district court committed any procedural errors, including selecting a sentence based on clearly erroneous facts or failing to adequately explain the chosen sentence. *United States v. Major*, 33 F.4th 370, 378 (7th Cir. 2022) (citing *United States v. Faulkner*, 885 F.3d 488, 498 (7th Cir. 2018)). Second, if no procedural error is found, the substantive reasonableness of the sentence is evaluated for abuse of discretion. *Id.* at 379 (citing *Faulkner*, 885 F.3d at 498).

### A. Procedure in Finding Breach

Courts look to contract law principles when assessing whether a plea agreement has been breached. *See United States v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013). Generally, the government "is bound to honor the promises it ma[de] to induce the defendant to plead guilty." *Id.* (citing *United States v. O'Doherty*, 643 F.3d 209, 217 (7th Cir. 2011)). But when a defendant substantially breaches the plea agreement, the

---

[1] While White serves out his term for his federal offenses, proceedings against him in Missouri state court have stalled. *See* Case 2322-CR00747-01, https://www.courts.mo.gov/cnet/caseNoSearch.do (search by case number).

government cannot be forced to honor its end of the bargain. *United States v. Olson*, 880 F.3d 873, 879 (7th Cir. 2018).

The district court relied on two different evidentiary findings to conclude that White breached the plea agreement. First, it pointed to White's marijuana violations contained in the PSR. The possession and use of marijuana, subject to certain restrictions, is legal in Illinois. 410 ILCS 705/10-5. But it remains illegal under federal law. 21 U.S.C. §§ 812(c)(10), 844. Second, the court considered a video showing White possessing a gun as a felon in violation of 18 U.S.C. § 922(g)(1).

The district court's factual findings made in connection with sentencing are reviewed for clear error. *United States v. Porter*, 114 F.4th 931, 938 (7th Cir. 2024). "Generally, facts considered at sentencing must be proved by a preponderance of the evidence." *Major*, 33 F.4th at 379 (citing *United States v. Lucas*, 670 F.3d 784, 792 (7th Cir. 2012)). To meet this requirement, evidence must be based on "sufficient indicia of reliability to support its probable accuracy." *Id.* (quoting *Lucas*, 670 F.3d at 792). The sentencing court "has great latitude in making factual determinations and may draw conclusions from evidence presented at a sentencing hearing." *United States v. Sunmola*, 887 F.3d 830, 837 (7th Cir. 2018). We reverse a district court's factual findings "only if 'after reviewing the entire record, we are left with the firm and definite conviction that a mistake has been made.'" *Major*, 33 F.4th at 379 (citing *United States v. Ranjel*, 872 F.3d 815, 818 (7th Cir. 2017)).

### 1. *Marijuana violations*

The PSR describes three different instances in which White engaged in marijuana-related violations. The first was reported to the district court in January 2022. Alongside traffic

offenses and failures to report for various supervisory checks, the report said that White was in a location where marijuana was used. In response, the district court held a non-compliance hearing and modified White's bond conditions to require 90 days of curfew with location monitoring.

In November 2022, a bond violation report was submitted, alleging that White's routine urinalysis had tested positive for marijuana. Then, in January 2023 in another report, White admitted to using marijuana. That report also noted White's January urinalysis sample was "diluted" and positive for marijuana. The court did not intervene for either of the latter two bond violation reports.

Before sentencing, White filed two objections to the PSR, but he did not object to the reports of his marijuana violations. At sentencing, the judge asked White whether, excluding the objections filed by his attorney, "all of the factual content contained in the PSR" was "truthful and accurate." White responded: "Yes, sir." White did not raise the issue of his marijuana violations until this appeal.

When deciding whether sufficient evidence existed of White's marijuana violations, the district court characterized his possession and use of the drug as "all but admitted to." The district court did not err when it relied on uncontroverted evidence from the PSR about the marijuana violations. *See Ranjel*, 872 F.3d at 819 (no error when adopting PSR's estimate for drug quantity determinations); *Sunmola*, 887 F.3d at 836–37 (no error when adopting findings in the PSR about the substantial hardship suffered by victims).

The district court acknowledged that federal prosecutors "don't push the marijuana as a violation very much," and the

court had not recently encountered a request to deviate from a plea agreement for a defendant's possession, use, or distribution of marijuana. Nonetheless, the court noted, possession and use of marijuana violate federal law. White's admission, positive urinalysis reports, and repeated interactions with law enforcement for possession and use of marijuana supported the court's finding that White violated federal law and thus breached the plea agreement.

The evidence of the marijuana violations in the PSR is reliable, and White does not challenge that. His sole argument against the district court's reliance on the violations is that the government failed to raise them in its notice to withdraw from the sentencing recommendation. But the marijuana violations were included in the PSR. White reviewed the PSR and even objected to two of its provisions. Nothing precluded him from objecting to the marijuana violations before or during sentencing. Further, as the government's counsel orally argued before us, defendants like White are "specifically advise[d]" that the use of marijuana on pretrial release violates federal law. Oral Argument at 10:18–10:37. White's repeated marijuana violations, all submitted to the court, would have provided White notice that his use of marijuana was a violation. *Id.* at 10:38–10:59.

Evidence about the marijuana violations is sufficient to show White broke federal law. The district court did not commit clear error in making that finding.

### 2. *Firearm violation*

The district court also cited White's possession of a firearm as a reason for granting the government's motion to be

released from the sentencing recommendation in the plea
agreement.

The government played a video at the sentencing hearing
showing White with a gun. That video was attached to an
email Plummer sent to the U.S. Attorney's Office on November 12, 2022, in which she said the video and accompanying
photographs were "recent. In the last 30 days." White argues
this video is not reliable evidence because the government
cannot establish it was recorded after he entered into the plea
agreement.

The district court provided White with three opportunities
to contest the use of that evidence for its sentencing determination: "[d]oes any counsel have any reason why the sentence
that I have just proposed should not be imposed as stated? …
Nothing new?"; "does either counsel request any further elaboration of my consideration of the 3553(a) factors?"; and to
White's counsel directly, "have I addressed all of your arguments in mitigation to your satisfaction?" In response to each
inquiry, White's counsel responded, in order, "[n]othing
new," "[n]o," and "[y]es." If these responses are deemed a forfeiture, he cannot show the district court ruled based on
clearly erroneous facts, *see United States v. Harris*, 118 F.4th
875, 887 (7th Cir. 2024), so his argument would fail under
plain error review. *United States v. Boyle*, 28 F.4th 798, 802 (7th
Cir. 2022) ("To overcome forfeiture, the defendant must show
that the district court committed plain error that affected both
his substantial rights and the fairness or integrity of the proceedings.").

But if White preserved this argument on appeal because
"[n]othing new" referenced his previous argument contesting
the date of the video evidence, then we review for clear error.

Evidentiary standards at a sentencing hearing are "more re-laxed" than the standards at trial. *Sunmola*, 887 F.3d at 837 (quoting *United States v. Minhas*, 850 F.3d 873, 878 (7th Cir. 2017)). An appeals court will thus reverse the district court only if there is a "firm and definite conviction that a mistake has been made." *Ranjel*, 872 F.3d at 818. Granting White the benefit of the doubt as to whether he forfeited his objection, we find no clear error.

Here, the video was timestamped "Sunday 11:57 a.m."—presumably within one week of being taken—and Plummer wrote in her accompanying email that the video was taken "[i]n the last 30 days." The district court acknowledged that Plummer had made inconsistent statements to law enforcement about the date when the video was taken. But after reviewing the video again at the sentencing hearing, the court decided that in context the video had sufficient indicia of reliability to show White possessing a gun and therefore breaching the plea agreement. *See Major*, 33 F.4th at 379.

White also objects to consideration of evidence related to the Missouri murder charge. The evidence the government presented included the video. Yet, the district court said three times during sentencing that the Missouri charge played no role in its analysis. At the beginning of the hearing, the court noted the "great unfairness to" White if the court should make a finding on those charges during the hearing. The court then explained a second time that instead of ruling on the Missouri charge, it would make a finding based on the "low hanging fruit" of the marijuana and firearm violations. Then, before analyzing the § 3553(a) factors, the court said it was "carving [] out" the Missouri charges and "segregating that out from consideration of the factors."

Under the express terms of the plea agreement, "[i]f the Defendant commits any violation of local, state, or federal law," the government "may ask the Court to be released from its obligations" under the agreement. The district court found White in breach of the agreement based on both his marijuana violation and his possession of a firearm as a felon. Each evidentiary finding provides an independently sufficient basis to establish breach. The district court did not commit procedural error when, after considering this evidence, it released the government from its obligations.

## B. Substantive Reasonableness

White also argues that his sentence was substantively unreasonable because the district court considered unreliable evidence from Plummer's emails. White's argument repeats his contentions of procedural error. His position is that the district court gave too much weight to unreliable evidence contained in the emails when imposing an above-guidelines sentence.

This court reviews the substantive reasonableness of a sentence for abuse of discretion. *United States v. Bridgewater*, 950 F.3d 928, 933 (7th Cir. 2020). "We do not ask what sentence we would impose; we ask whether the district judge imposed a sentence for logical reasons that are consistent" with the factors enumerated in § 3553(a). *United States v. Campell*, 37 F.4th 1345, 1352 (7th Cir. 2022) (citing *United States v. Bonk*, 967 F.3d 643, 650 (7th Cir. 2020)). "'[S]ubstantive reasonableness occupies a range, not a point,' and an above-Guidelines sentence is neither presumptively nor absolutely unreasonable." *United States v. Wood*, 31 F.4th 593, 600 (7th Cir. 2022) (citing *United States v. Morgan*, 987 F.3d 627, 632 (7th Cir. 2021)). When reviewing above-guidelines sentences, we "consider

the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). As long as the court gives an "adequate justification" for its departure, it may impose a sentence above the guidelines range it deems "too lenient." *Id.* (quoting *Morgan*, 987 F.3d at 632).

The district court thoroughly discussed its consideration of the § 3553(a) factors. It carefully explained the reasons for imposing a sentence of 194 months, much longer than the 121 months suggested at the top of the guidelines range. The court began by characterizing White as "a danger to the public," observing that he "started off with a tendency toward violence at age 14." It listed the many instances over the course of a decade when White engaged in violent behavior and broke the law, including previous instances of firearms possession, domestic battery, three episodes of domestic violence, and involvement with a local gang. The court also considered mitigating factors. It noted the absence of White's father in his childhood and allegations of physical abuse by his uncle. The court acknowledged White's difficult childhood culminating in the current charges in his relative youth.

White was convicted of two federal felon-in-possession crimes. When placed on bond pending sentencing, the court said White "violated even that trust." White "would have been charged [with] a third" felon-in-possession violation consistent with the video evidence submitted by Plummer to the U.S. Attorney's Office. The court also noted White's "idiotic" attempts to obstruct justice by calling his associates to instruct them to hide guns and drugs while he was being observed in police custody for the violations in this case.

White's attorney argued in favor of incremental sentencing, asking the court to impose a short sentence for "White's first real stint" before increasing the sentence if White should violate the law again after his release. But the district court based the sentence on the "unique characteristics and qualities" of White's crime. *Wood*, 31 F.4th at 600. The two separate felon-in-possession violations, alongside the other violations the court listed, led it to conclude, "I don't know what I can do to deter you with a short sentence of imprisonment. You are such a danger that I think you are beyond current deterrence."

On appeal, White contends his sentence would be lower if the district court had not considered the video recording of his gun possession in its evaluation of the § 3553(a) factors. But as discussed above, the district court did not procedurally err in concluding that Plummer's emails and attached video were reliable. So, the video recording was properly considered at sentencing.

Even more, the date of the video recording is of no consequence at this stage. It is sufficient that it shows White in possession of a firearm. The district court was entitled to consider this evidence in tailoring a sentence specific to White. The video recording is neither determinative of nor excessively weighted in the court's analysis. Rather, it shows another violation of federal law and is one among many violations the district court cited as part of its sentencing determination. When reviewing sentences for substantive reasonableness, we do not "substitute our judgment for that of a district court, which 'is better situated to make individualized sentencing decisions.'" *Wood*, 31 F.4th at 600 (quoting *United States v. Daoud*, 980 F.3d 581, 591 (7th Cir. 2020)).

The district court did not abuse its discretion in imposing an above-guidelines sentence after meticulously and properly considering the § 3553(a) factors.

### III.

The district court appropriately resolved White's objections to the procedures followed at his sentencing hearing. The court did not clearly err when it relied on uncontroverted evidence of White's marijuana possession and use, as well as gun possession, to relieve the government of its sentencing recommendation in the plea agreement. Further, the court did not abuse its discretion when imposing a sentence above the guidelines.

AFFIRMED.